**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

|                                         |     |                           |
| --------------------------------------- | --- | ------------------------- |
| IN RE:                                  | )   |                           |
|                                         | )   | **Case No. 19-80155-CRJ11** |
| **STEVE SHICKLES, JR. and RONDA**       | )   |                           |
| **SHICKLES,**                           | )   | **Chapter 11**            |
|                                         | )   |                           |
| **Debtors.**                            | )   |                           |

### EMERGENCY MOTION TO CONVERT CASE TO CHAPTER 7, OR IN THE ALTERNATIVE, DISMISS AND FOR RELIEF FROM THE AUTOMATIC STAY

Movants Simple Helix, LLC ("Simple Helix"), Deep Blue Holdings, LLC ("Deep Blue"), Alpha Hosting, LLC ("Alpha"), The Westmoreland Company, Inc. ("Westmoreland"), Karl Leo, and Jada Leo (collectively, the "Movants"), creditors and parties-in-interest in the above-styled bankruptcy case, hereby respectfully file this Emergency Motion to Convert Case to Chapter 7 or, in the Alternative, Dismiss and for Relief from the Automatic Stay (the "Motion"). In support of this Motion, Movants state as follows:

### PRELIMINARY STATEMENT

This case arises from a massive fraud and embezzlement scheme perpetrated by Steve Shickles, Jr. ("Shickles") against his former employer and its affiliates and investors. On January 9, 2019, after discovering Shickles' wrongful actions, Movants filed an Emergency Petition for Temporary Restraining Order and Preliminary Injunction in the Circuit Court of Madison County, Alabama (the "State Court"), styled *Simple Helix, LLC, et al. v. Steve Shickles*, civil action no. CV-2019-900063 (the "Civil Action"). On January 10, 2019, the State Court entered a temporary restraining order (TRO) against Shickles. Subsequently, on January 14, 2019, Movants filed a Verified Complaint naming Shickles and his wife, Ronda Shickles (collectively, the "Debtors"), as defendants in the Civil Action, and bringing causes of action premised upon conversion,

conspiracy, fraud, breach of contract and breach of fiduciary duties. The State Court scheduled a preliminary injunction hearing for Friday, January 18, 2019, at 9:00 a.m. On Thursday, January 17, 2019 (the "Petition Date"), at 3:26 p.m., the Debtors instituted this bankruptcy proceeding.

The Movants seek conversion of this case to one under chapter 7 of the Bankruptcy Code due to the Debtors' conduct, particularly that of Shickles, in embezzling and misappropriating millions of dollars from the Movants. Under no circumstances should the Debtors be allowed to remain as debtors-in-possession. Conversion, rather than dismissal, is the appropriate remedy because it will allow for the appointment of a chapter 7 trustee to assume control of the bankruptcy estate and will continue to subject the Debtors to the jurisdiction of this Court. Additionally, the Movants seek relief from the automatic stay to permit the State Court to adjudicate the Civil Action and determine the underlying liability of the Debtors to Movants. Allowing the State Court to hear and determine state law claims gives effect to interests of federalism and preserves this Court's resources (particularly in light of the present funding challenges facing federal courts). Based on the foregoing, this Court should convert the Debtors' case to one under chapter 7 and modify or terminate the automatic stay to allow the State Court to determine the Debtors' liability in the Civil Action.

## JURISDICTION

1.      On the Petition Date, the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). Pursuant to sections 1107 and 1008 of the Bankruptcy Code, the Debtors currently are acting as debtors-in-possession and retain control over their assets.

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

2

3. The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 1112 and § 362(d).

## BACKGROUND

### The Debtor's Employment Relationship with the Movants

4. Prior to the Petition Date, Shickles was a member and manager of 451 Press, LLC ("451 Press"). On March 30, 2010, Deep Blue became the owner of 451 Press, and in conjunction with the change in ownership, Shickles became an employee of Deep Blue.

5. Deep Blue is the parent company of Simple Helix, which in turn, is the parent company of Alpha (formerly known as SH Computing Services, LLC). Deep Blue's members are Jada Leo, Karl Leo, Westmoreland and Shickles.

6. Shickles served as an officer and manager of Simple Helix from December 29, 2008 until December 26, 2018.

7. Shickles was also an officer and manager of Deep Blue from March 30, 2010 until December 26, 2018, and its predecessor in interest 451 Press from September 15, 2006 through March 30, 2010.

8. On December 26, 2018, Shickles was removed as an officer and manager of Deep Blue, Simple Helix, and Alpha.

9. On January 3, 2019, Shickles abruptly resigned his employment.

### Shickles' Pre-Petition Conversion and Fraud

10. On December 28, 2018, the members of Deep Blue first learned of a PayPal account in the name of Simple Helix that Shickles had secretly operated from at least November 2007 through January 2019 (the "Simple Helix PayPal Account"). Shickles suppressed the fact of the Simple Helix PayPal Account's existence from Simple Helix's other owners and investors.

3

11.     From January 5, 2012 through January 3, 2019, Simple Helix received from customers approximately $2,561,022.79 into the Simple Helix PayPal Account.

12.     Upon information and belief, from January 5, 2012 through January 3, 2019, Debtors spent approximately $831,196.45 directly from the Simple Helix PayPal Account for almost exclusively personal expenses unrelated to any approved business expenditures.

13.     Upon information and belief, from January 5, 2012 through January 3, 2019, the Debtors withdrew or transferred into their personal bank account(s), including, but not limited to their account with Wells Fargo with an account number ending in 5479 (the "Wells Fargo Account"), more than $1,664,819.93.

14.     At the time Movants' discovered the existence of the Simple Helix PayPal Account, the Wells Fargo Account was connected directly to the Simple Helix PayPal Account. Importantly, the Wells Fargo Account is the same account into which Simple Helix direct deposited Shickles' paychecks.

15.     The Debtors additionally used the Simple Helix PayPal Account to facilitate three (3) separate loans for their personal benefit. As of January 3, 2019, the total balance remaining owed on these three loans was approximately $58,317.25.

16.     Upon information and belief, the Debtors have absconded and/or misappropriated additional funds from the Simple Helix PayPal Account, which amounts have yet to be discovered.

17.     Upon information and belief, Shickles controlled and maintained two additional PayPal accounts, one in the name of Alpha (the "Alpha PayPal Account") and one in the name of 451 Press (the "451 PayPal Account," and together with the Helix PayPal Account, the Alpha PayPal Account, the "PayPal Accounts").

4

18.     Upon information and belief, the Debtors misappropriated and put to their own personal use funds belonging to Movants through the Alpha PayPal Account and the 451 PayPal Account

19.     For the period from May 29, 2013 through January 3, 2017, as part of an internal review connected with an audit, Movants identified approximately $3,021,339.18 reimbursed or credited to Shickles for payments made on his personal American Express card.  Movants made numerous requests for these American Express statements and vendor invoices to justify these expenses as business related.  However, Shickles refused and failed to provide any documentation for these charges.

20.     For the period from July 16, 2010 through May 9, 2016, Shickles personally, or at his direction, transferred into his own account, made cash withdrawals or made payment for personal expenditures in an amount of approximately $1,483,448.26.  Movants have made requests from Shickles to justify these expenditures as legitimate business expenses, but he has refused to do so.

21.     For the period from January 1, 2012 through December 10, 2017, Movants identified credits to Shickles' payable account maintained by Simple Helix in the amount of $3,157,216.11 that were improperly entered by or on Shickles' behalf into Simple Helix's accounting software without providing the required supporting documentation or vendor invoices.  These unverified and unsubstantiated credits resulted in overpayment to Shickles of approximately $3,068,371.87.

22.     Further, Shickles obtained a loan in the name of Simple Helix and used the proceeds to purchase a 2018 Ford Expedition.

5

23.     On January 14, 2019, Shickles was arrested and charged with criminal felony theft related to these fraudulent pre-petition activities.

## Temporary Restraining Order and Preliminary Injunction

24.     In response to the rampant misappropriation and fraud perpetrated by the Debtors, on January 9, 2019, the Movants filed their Emergency Petition for Temporary Restraining Order and Preliminary Injunction (the "TRO Petition") against Shickles in the State Court, seeking, among other things, a temporary restraining order and preliminary injunction prohibiting the Debtors from removing personal property from two warehouse located in Huntsville, Alabama (the "Warehouses") and freezing the Wells Fargo Account.[1]

25.     On January 10, 2019, the State Court entered a Temporary Restraining Order (the "TRO"), enjoining the Debtors from removing personal property from the Warehouses and freezing the Wells Fargo Account.[2]  The State Court additionally set the preliminary injunction for hearing on Friday, January 18, 2019.  (*See* TRO, p. 2.)

26.     The Movants filed an amended Verified Complaint against the Debtors on January 14, 2019 (the "Verified Complaint"), bringing claims for intentional conversion, fraud, conspiracy, breach of contract, and breach of fiduciary duty.[3]

27.     In connection with the Verified Complaint, the Movants filed a Motion for Pre-Judgment Seizure of Property (the "Replevin Motion") on January 15, 2019.[4]  By Order dated January 17, 2019, the State Court also set the Replevin Motion for hearing on January 18, 2019.

---

[1] A true and correct copy of the TRO Petition is attached hereto as **Exhibit A**.
[2] A true and correct copy of the TRO is attached hereto as **Exhibit B**.
[3] A true and correct copy of the Verified Complaint is attached hereto as **Exhibit C**.
[4] A true and correct copy of the Replevin Motion is attached hereto as **Exhibit D**.

6

## Debtor's Chapter 11 Case

28.     Only a day before the preliminary injunction hearing, the Debtors filed a voluntary

petition for relief under Chapter 11 of the United States Bankruptcy Code on January 17, 2019.

29.     According to the Debtors' petition, the Movants are their only unsecured creditors.

[*See* Doc. No. 1, pp. 8-10.]

## ARGUMENT

## I.     MOTION TO CONVERT OR, IN THE ALTERNATIVE, DISMISS

30.     Because of the Debtors' pre-petition multi-million-dollar theft, fraud, and gross

breach of fiduciary duties, this Court should grant the Movants relief under sections 1112 and

convert the case to one under chapter 7.[5]

### A.     *Because the Debtors filed the Petition in Bad Faith, this Court Should Convert the Case to Chapter 7.*

31.     Section 1112 of the Bankruptcy Code provides that "on request of a party in

interest, and after notice and a hearing, the court shall convert a case under this chapter to a case

under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors

---

[5] The Court could also fashion relief under § 1104 of the Bankruptcy Code and appoint a chapter 11 trustee.  For the reasons stated in the Motion, conversion to chapter 7 and appointment of a chapter 7 trustee is the better and more efficient manner of proceeding.  However, in the event the Court declines to convert or dismiss the case, the Court should appoint a chapter 11 trustee under section 1104.  Section 1104 of the Bankruptcy Code provides that the Court "shall order the appoint of a trustee … for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(1). '[O]nce "cause" is shown, the court must appoint a trustee."  *In re PRS Ins. Group, Inc.*, 274 B.R. 381, 384 (Bankr. D. Del. 2001).  As set out in the TRO Petition and Verified Complaint, the Debtors have engaged in numerous acts of fraudulent and dishonest behavior, by using Shickles' position to siphon millions of dollars of corporate assets for their own personal benefit.  Such pre-petition fraud constitutes clear grounds mandating the appointment a chapter 11 trustee (unless the case is converted).  *See In re PRS Ins. Group, Inc.*, 274 B.R. at 385 ("Diversion of funds and misuse of corporate assets constitute fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1)."); *In re Vaughan*, 429 B.R. 14, 28 (Bankr. D.N.M. 2010) (finding cause based on millions of dollars of intercompany transfers, most of which were 1) probably not made with sound business judgment, 2) against the interests of the creditors of and investors in the transferring companies, and 3) not disclosed to the investors").

7

and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

32.     Under section 1112, this Court may dismiss or convert a chapter 11 case filed in bad faith. *See In re Piazza*, 719 F.3d 1253, 1263–64 (11th Cir. 2013) ("[A]s interpreted by the Supreme Court and nearly every federal court of appeals, 'for cause' in §§ 1112(b) … includes bad faith or a lack of good faith.")  In fact, "every federal bankruptcy statute since the nineteenth century has 'incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Id.* at 1265 (citing *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986)); *cf. Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877); *see also In re Piazza*, 451 B.R. 608, 613 (Bankr. S.D. Fla. 2011) ("[O]ne of the primary policy aims of bankruptcy [is] to give the honest yet unfortunate debtor a fresh start—not the dishonest business person a head start" (citing *In re O'Brien*, 328 B.R. 669, 674 (Bankr. W.D.N.Y. 2005)).

33.     "A comprehensive definition of good faith is not practical."  *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983); *Piazza*, 719 F.3d at 1271 ("Bad faith does not lend itself to a strict formula.").  Rather, "[i]n light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith." *Id.*[6]  "The real test which still remains is the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization." *In re Serfass*, 325 B.R. 901, 906 (Bankr. M.D. Fla. 2005) (quoting *In re Julius Roehrs,* 115 F.2d 723 (3d Cir.1940)).

---

[6] Movants note that the *Piazza* Court analyzed the "bad faith" standard under section 707(a).  Akin to section 1112, section 707(a) allows a bankruptcy court to dismiss a chapter 7 case for cause. *See* 11 U.S.C. § 707.  The *Piazza* Court concluded that pre-petition "bad faith" constituted cause under section 707 (a).   719 F.3d at 1262.

8

34.    Applying this totality of the circumstances test, the Bankruptcy Court for the

Middle District of Florida stated as follows:

> The hallmarks of bad faith in filing a Petition are: (1) pre-petition litigations already pending in the state court between the parties; (2) it is basically a two party dispute; (3) the debtor is either solvent or it has very few unsecured debts which the debtor is able to meet; (4) the Petition is filed for an improper purpose; (5) there is no need for reorganization and the filing was for the sole purpose to use the judicial resources of the bankruptcy court, most likely under the assumption that the debtor will receive a more favorable treatment in the bankruptcy court then it had received so far in the state court, and (6) there is no ability or sincere desire to reorganize the financial affairs of the debtor.

*Id.* at 905-06.

35.    Each of these factors exist in the present case.  As clearly set out in the Debtors'

petition, this bankruptcy case concerns a dispute between the Movants and the Debtors that is the

subject of pending litigation in the State Court.  The Debtors' filing came less than 24 hours before

an evidentiary hearing in the State Court on the Movants' requests for a preliminary injunction and

pre-judgment seizure.  Moreover, the only unsecured debts that the Debtors identified are those

owing to the Movants.  Bankruptcy courts across the country have found that litigants cannot use

the chapter 11 process as a state court litigation tactic.  *See id.* at 906 ("Generally, the courts do

not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such

litigation is still pending in a non-bankruptcy forum prior to the commencement of the case."); *In

re FL. Invest. USA Inc.*, No. 13-10814-A-11, 2013 WL 4039807, at *3 (Bankr. E.D. Cal. Aug. 7,

2013) ("Here, the court finds that the debtor's filing of its Chapter 11 petition was a litigation tactic

and, therefore, lacks good faith."); *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026–27 (11th Cir.

1989) ("The evidence of bad faith in this case includes … the filing of the petition during a lunch

recess in eleventh-hour court ordered settlement negotiations in the state court litigation.").

36.    The Movants believe conversion, rather than dismissal, is in the best interests of

the bankruptcy estate to allow a chapter 7 trustee to assume control of and preserve any purported

property of the estate, including funds in the Wells Fargo Account and property located in the Warehouses, investigate potential claims and avoidance actions of the estate, and otherwise provide for an orderly administration of this bankruptcy case. Allowing the Debtors to remain as debtors-in-possession would require the Debtors to investigate themselves. As evidenced by the Debtors' prepetition conduct, particularly that of Shickles, this Court cannot rely on the Debtors to properly exercise their fiduciary duties in the best interests of the bankruptcy estate or their creditors. *See In re Climate Control Mech. Servs., Inc.*, 585 B.R. 192 (Bankr. M.D. Fla. 2018) (stating that individual chapter 11 debtors owe fiduciary duties to their creditors to act in best interests of the bankruptcy estate, requiring them to place the interests of their creditors ahead of their own).

**B.** ***Alternatively, if this Court Declines to Convert to Chapter 7, this Court Should Then Decline to Exercise Jurisdiction over the Dispute between the Movants and the Debtors.***

37. The Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if … the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). "Bankruptcy is an equitable remedy. When it is invoked to accomplish ends inconsistent with its equitable purposes, the bankruptcy court must dismiss the proceeding." *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 558 (D. Conn. 2016). As discussed above, the Debtors have filed this proceeding in bad faith to hinder Movants' ability to recover funds misappropriated and stolen by Shickles, and this Court should decline to exercise jurisdiction.

38. Under section 305, "a court should not take jurisdiction over a two-party dispute, unless special circumstances exist." *In re Axl Industries, Inc.*, 127 B.R. 482, 484 (S.D. Fla. 1991), *aff'd in part, appeal dismissed in part sub nom. Remex Elecs. v. AXL Industries*, 977 F.2d

10

598 (11th Cir. 1992). In the present case, the issues raised in the Civil Action between Movants and Debtors should be decided in the State Court prior to any attempted reorganization or liquidation. Consequently, this Court should dismiss or suspend these proceedings until the issues in the Civil Action are resolved. *See In re Mazzocone*, 183 B.R. 402, 421 (Bankr. E.D. Pa. 1995) ("Because a bankruptcy court is often not the proper forum in which to adjudicate non-bankruptcy issues, litigation of such issues is frequently best left to the state courts and should not be imposed upon this specialty court unless necessary to resolve a bankruptcy-centered dispute."); *In re Duratech Industries, Inc.*, 241 B.R. 291, 300 (Bankr. E.D.N.Y. 1999) ("[A]ll the 'action' is going on before the District Court, and until those matters are decided, there can be no meaningfully informed role for this Court to play in moving the chapter 11 case along to confirmation, dismissal, or conversion."); *In re Gabriel Techs. Corp.*, 13-30341, 2013 WL 5550391, at *5 (Bankr. N.D. Cal. Oct. 7, 2013) ("[T]he overwhelming interests of creditors generally support suspending these Chapter 11 cases and letting the Appeals run their course. If Qualcomm wins there are not many options left for Debtors and if Debtors prevail, the court can revisit the future conduct of these cases.").

## II.     MOTION FOR RELIEF FROM STAY

39.     Under section 362 of the Bankruptcy Code, "the court shall grant relief from the stay provided … for cause." 11 U.S.C. § 362(d)(1). Courts consider various factors in determining whether cause exists to lift the stay to allow litigation to proceed in an alternate forum, including:

> whether relief would result in a partial or complete resolution of the issues; … whether the other proceeding involves the debtor as a fiduciary; … the interests of judicial economy and the expeditious and economical resolution of litigation; … whether the parties are ready for trial in the other proceeding; and … impact of the stay on the parties and the balance of the harms.

*In re Mid-A. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (citations omitted).

11

40.     In the present case, the parties were set for an evidentiary hearing on the merits *within 24 hours of the filing of the petition*.  Moreover, due to the recent federal government shutdown, judicial economy favors resolving Movants' non-core state law claims against the Debtors in the State Court.  Bankruptcy courts routinely grant relief from stay to state court litigants to proceed against the Debtors *as to liability* in the more efficient forum.  *See In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 578–79 (Bankr. N.D. Ala. 1994) ("[T]his Court finds that there is cause under section 362(d) to grant the Movant's motion for relief from the stay and allow her to continue her state court lawsuit against the Debtor, provided that any judgment she may receive from the state court may be executed only by way of the filing of a proof of claim in this bankruptcy case."); *In re Mid-A. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) ("Permitting the state court litigation to proceed will result in a complete resolution of the issue of Mid–Atlantic's alleged liability to Maintainco.").  This Court should grant relief from the automatic stay, allow the State Court to determine the Debtors underlying liability, and retain jurisdiction over the administration of the bankruptcy estate once that liability is determined.

WHEREFORE, Movants respectfully requests that the Court enter an order:

(i)      Converting this case to chapter 7 and granting the Movants relief from stay to determine liability in the Civil Action; or, in the alternative,

(ii)     Appointing a chapter 11 trustee for cause and granting the Movants relief from stay to determine liability in the Civil Action; or, in the further alternative;

(iii)    Dismissing this case; or, in the further alternative;

(iv)    At the absolute minimum, granting the Movants relief from stay to determine liability in the Civil Action.

The Movants further request that the Court grant such further and additional relief as the Court deems just and proper.

Case 19-80155-CRJ11    Doc 12    Filed 01/21/19    Entered 01/21/19 12:53:38    Desc Main
Document      Page 12 of 14

Respectfully submitted,

/s/ Kevin C. Gray

Kevin C. Gray
Andrew J. Shaver
**BRADLEY ARANT BOULT CUMMINGS LLP**
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801
Tel:      (256) 517-5150
Email:  kgray@bradley.com
             ashaver@bradley.com

-and-

Brian J. Richardson
**LEO LAW FIRM, LLC**
200 Randolph Ave.
Huntsville, AL 35801
Tel:      (256) 539-6000
Email:  bricahrdson@leo-law.com

*Attorneys for Movants Simple Helix, LLC, Deep Blue Holdings, LLC, Alpha Hosting, LLC, The Westmoreland Company, Inc., Karl Leo, and Jada Leo*

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2019, I electronically filed the foregoing with the Clerk of the Court and served the following using the CM/ECF system which will send notification to all parties of record, including the following:

Kevin D. Heard
HEARD, ARY & DAURO, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, AL 35801
*Proposed Counsel to the Debtors*

Richard M. Blythe
Post Office Box 3045
400 Well Street NE, Room 236
Decatur, Alabama 35602
*Bankruptcy Administrator*

/s/ Kevin C. Gray
Of Counsel