## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **In the Matter of:** | ) | |
| | ) | |
| **STEVE SHICKLES and** | ) | |
| **RONDA SHICKLES** | ) | |
| | ) | **CASE NO. 19-80155-CRJ11** |
| | ) | |
| **Debtors.** | ) | **CHAPTER 11** |
| | ) | |

## DEBTORS' RESPONSE IN OPPOSITION TO MOVANT'S EMERGENCY MOTION TO CONVERT CASE TO CHAPTER 7 OR IN THE ALTERNATIVE TO DISMISS AND FOR RELIEF FROM THE AUTOMATIC STAY

**COMES NOW**, Steve Shickles and Ronda Shickles, (hereinafter, jointly "Debtors") and file this Response in Opposition to the Movants' Emergency Motion to Convert Case to Chapter 7 or in the Alternative to Dismiss And For Relief from the Automatic Stay and say:

### JURISDICTION AND VENUE

1.    On January 17, 2019 (the "Petition Date") the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, §§ 101, *et. seq.* ("Bankruptcy Code"), thereby commencing a Chapter 11 case [Doc. #1].

2.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3.    The venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND INFORMATION

4.    The Debtors are married and have two children. Since the Petition Date the Debtors have continued in control and possession of their property pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee has been appointed in this case.

5.    Pre-petition Mr. Shickles used to work for Plaintiff, Simple Helix as its President. Mr. Shickles was significantly involved in the day to day operations of the Plaintiff including overseeing the construction of a multi-million dollar data center.

6.    Simple Helix is actually owned by a holding company known as Deep Blue Holdings, LLC. The Debtor owned only 1% of Deep Blue and the remaining 99% is owned by Jada and Carl Leo and their company, The Westmoreland Company, Inc. (collectively, the "Leo Movants").

7.    Despite only owning 1% of the parties' business, the Leo Movant's fraudulently induced Mr. Shickles to personally guarantee a $14,000,000 loan from First Bank to Simple Helix for the construction of a data center owned by Simple Helix. Indeed this debt may actually be greater than 14 million due to the fact that there is now a pending lawsuit by the general contractor seeking payment of approximately 3.2 Million Dollars to enforce its materialman's lien and work and labor performed.

8.    As part of their fraud, the Leo Movant's further induced Mr. Shickles to loan Simple Helix more than $300,000 in order for the company to make payroll and pay operating expenses during the pendency of the loan. Mr. Shickles loaned this money to Simple Helix based upon the multiple promises made by Jada Leo, including but not limited to, that Mr. Shickles would be given more equity in the company, would receive a bonus compensation plan and that the "loans" would be fully repaid.

9.    In November, 2018, the Leo Movant's fraud became apparent when they refused to repay the loan and otherwise honor their representations and promises. As a result, Mr. Shickles resigned his employment with Simple Helix.

10.   Shortly after Mr. Shickles resigned, First Bank called the $14,000,000 loan for the data center which is also guaranteed, jointly and severally, by the Leos. Also, the general contractor for the data center sued Simple Helix.

11.     It is believed that Mr. Shickles resignation and mounting financial pressure facing the Leo's

arising from the $14,000,000 loan and the general contractor's lawsuit lead to the filing of a

state court lawsuit styled *Simple Helix, LLC et. al. vs. Steve Shickles et. al..,* Case No. 47-

CV-2019-9000063 (hereinafter referred to as "Lawsuit").   Indeed, the Leo Movant's have

launched a slander and media campaign which appears designed to make Mr. Shickles "the

fall guy" surrounding the currently financial state of the business.  In reality, it the Leo

Movant's that have caused that, including with high interest loans made to themselves,

their acquaintances and family members.  Some of those loans were made at rates higher

than 10% when prevailing market rates were less than 3%.  Indeed, many of the sworn

affidavits filed in the Lawsuit are directly contradicted by documentary evidence in

possession of the company and its majority shareholders.

## PLAINTIFF'S MOTION IS DUE TO BE DENIED.

12.     Section 1112 of the Bankruptcy Code provides, in part, that:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest,
and after notice and a hearing, the court shall convert a case under this chapter to a case
under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of
creditors and the estate, for cause unless the court determines that the appointment under
section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

13.     Subsection 1112(b)(4)(A) defines "cause" as including the following:

(**A**) substantial or continuing loss to or diminution of the estate and the
absence of a reasonable likelihood of rehabilitation;

(**B**) gross mismanagement of the estate;

(**C**) failure to maintain appropriate insurance that poses a risk to the estate or
to the public;

(**D**) unauthorized use of cash collateral substantially harmful to 1 or more
creditors;

(**E**) failure to comply with an order of the court;

(**F**) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(**G**) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(**H**) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(**I**) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(**J**) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(**K**) failure to pay any fees or charges required under chapter 123 of title 28;

(**L**) revocation of an order of confirmation under section 1144;

(**M**) inability to effectuate substantial consummation of a confirmed plan;

(**N**) material default by the debtor with respect to a confirmed plan;

(**O**) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(**P**) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

14.   Obviously, none of the above described acts and omissions apply to the Debtors. Furthermore, there are substantial reasons why the Debtors are entitled to remain in Chapter 11.  Initially, this case was filed in good faith.   The real test of good faith remains the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization." *In re Serfass,* 325 B.R. 901, 906 (Bankr.M.D.Fla.2005) (quoting *In re Julius Roehrs*, 115 F.2d 723 (3d Cir.1940)).

15.   In this case the Debtor is not only facing the claims asserted by the Leo's in their Lawsuit but he is also facing more than 14 million dollars of debt from First Bank which he incurred

for the benefit of his former employer.  In addition to the debt owed to First Bank, Debtor Steve Shickles also incurred credit card debt both personally and on behalf of his former employer which he is now incapable of paying. Hence, contrary to the assertions of Movant, this case as not solely filed to frustrate Movant's attempts to recover on their claims.

16. Clearly, the Debtors have a very real and substantial need for reorganization given the debts which they owe.  Furthermore, they have significant equity in their home and other personal property which needs to be administered as part of this case along with other personal property.

17. Furthermore, the Debtor has viable defenses to the claims asserted in the Lawsuit.  Indeed, Defendant Steve Shickles possesses counterclaims against the Leo Movants for among other claims, fraud, suppression, oppression, deceit, money had and received, money loaned and breach of fiduciary duty.   Additionally, Mr. Shickles has information that supports claims against one or more of the Leo Defendants for violations of federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, among other federal and state laws.  As such, it would be manifest error to covert or dismiss this case at this stage of the proceedings.

18. Furthermore, the Debtors understand the duties imposed upon them under applicable bankruptcy law.  Indeed, upon the filing of this case the Debtor's became Debtors in Possession. Based upon the requirements of federal bankruptcy law the Debtors have proceeded with closing their pre-petition bank accounts and depositing all funds, including those previously held at the Wells Fargo Bank, into the Debtor in Possession Bank Account maintained at North Alabama Bank, Account No. xxxx5161.

19. Furthermore, the Debtors are in the process of preparing and filing the remainder of their bankruptcy schedules and complying with the duties imposed upon them under §521 of the Bankruptcy Code. For these reasons, the Debtors submit that Movant's motion is due to be denied as "cause" does not exist to dismiss or convert this case.

20. Similarly, there does not exist "cause" for granting Movant's relief from the automatic stay. At this point, the Debtors have removed the Lawsuit to the Bankruptcy Court. Prior to doing so, the Leo Movants sought and obtained a prejudgment writ of seizure, <u>without notice to the Debtors</u>, and seized their assets. Obviously, the reason why the Leo's didn't want to advise the Debtors of their stealth attack was because they knew that it would meet significant opposition – which it has --- and would fail when exposed under the light of the Truth. As such, the traditional basis for which lifting of the stay are not present in this case. The Debtors believe that they are in need of protection under the bankruptcy code for the purpose of not only resolving the claims and counterclaims asserted between Mr. Shickles and the Leo Movants but also to address the claims of the remaining creditors of the Debtors.

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that this Court deny the relief requested of the Movants or alternatively, that the Court allow the Debtors sufficient time through discovery and other procedures in which to defend themselves against these allegations, plus grant them such further and additional relief as to which they are justly entitled.

Respectfully submitted this 23rd day of January 2019.

/s/ Kevin D. Heard
Kevin D. Heard
*Attorney for Debtor*
**Heard, Ary & Dauro, LLC**
303 Williams Avenue, Suite 921
Huntsville, Alabama 35801
256-535-0817
kheard@heardlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January 2019, I served a copy of the foregoing on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard Blythe
Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov

**Kevin C. Gray**
**kgray@bradley.com**
**Attorney for Leo Movants**

**Notice will not be electronically mailed to:**

**All parties on the attached matrix were served via U.S. Mail.**

/s/ Kevin D. Heard
Kevin D. Heard