IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| STEVE SHICKLES, JR. | ) | CASE NO. 19-80155-CRJ11 |
| SSN: XXX-XX-4301 | ) | |
| | ) | CHAPTER 11 |
| RONDA SHICKLES | ) | |
| SSN: XXX-XX-0467 | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## REVISED AMENDED JOINT PLAN OF REORGANIZATION DATED JUNE 19, 2019

Steve Shickles, Jr. and Ronda Shickles, husband and wife, as Debtors and Debtors-in-possession (collectively, the "Debtors") and Simple Helix, LLC ("Simple Helix"), as joint Plan Proponents (hereinafter Debtors and Simple Helix are jointly referred to as "Plan Proponents"), hereby propose the following plan of liquidation pursuant to Section 1121(a) of Title 11 of the United States Code. The following are essential to a complete understanding and implementation of this Plan: (i) the Definitions contained in Article I below; (ii) the Disclosure Statement dated June 9, 2019 which contains the Debtors background, identifies assets to be liquidated, the creation of a liquidating trust and appointment of the Liquidating Trustee, projections for future recoveries, a summary and analysis of this Plan and other related matters; and the (ii) Liquidating Trust Agreement dated July 17, 2019, which creates a grantor trust into which assets belonging to the Debtors will be transferred, the proceeds maintained in trust, and ultimately distributed to Allowed Claims.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply. Each of the terms set forth herein shall have the meaning ascribed to such term by the Plan and such meaning shall be equally applicable to the singular and plural forms of the terms so defined. All definitions are, and shall be, regarded as integral, substantive and operative provisions of the Plan.

1

## DEFINITIONS.

**1.1** **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of this Chapter 11 Case allowed under Sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estate, any indebtedness or obligations incurred or assumed by the Debtors as Debtors in possession, any costs, expenses, and attorney's fees incurred by a Plan Proponent or by counsel for the Debtors as allowed by the Bankruptcy Court, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtors' Estate under Section 1930 of Chapter 123 of Title 28 of the United States Code.

**1.2** **"Administrative Expense Claim Bar Date"** has the meaning set forth in Section 2.1 of Article II.

**1.3** **"Allowed"** means, with reference to any Claim or Interest, (i) any Claim or Interest that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, and that is not otherwise Disputed, (ii) any timely filed Claim or Interest as to which no objection to allowance has been made or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim or Interest expressly allowed by a Final Order or hereunder.

**1.4** **"Allowed Amount"** when referring to a Claim means the amount Allowed.

**1.5** **"Available Funds"** means the amount of Cash held by the Debtors or the Liquidating Trustee, as the case may be, available to be distributed to holders of Allowed Claims, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and the fees and expenses of the Debtors, the Liquidating Trustee, and their professionals, including, but not limited to, the proceeds of the liquidation of the assets of the Debtors or the Estate, which also includes the recoveries and proceeds of Causes of Action and Avoidance Actions.

**1.6** **"Avoidance Action"** means any claim, action or cause of action of the Debtors or the Estate, or either of them, that is or may be the subject of an adversary proceeding or contested matter under Sections 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, or pursuant to any similar or related state or federal statutes or common law (including fraudulent transfer laws) whether or not litigation has been commenced as of the Confirmation Date to prosecute such claim, action, or cause of action.

**1.7** **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**1.8** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Alabama, having jurisdiction over this Chapter 11 Case.

**1.9** **"Bankruptcy Court Fees"** means the quarterly fees assessed in the Chapter 11

Case pursuant to 28 U.S.C. § 1930(a)(7).

**1.10** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time to time, applicable to this Chapter 11 Case, and any Local Rules of the United States Bankruptcy Court for the Northern District of Alabama applicable to this Chapter 11 case.

**1.11** **"Business Day"** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in Huntsville, Alabama are required or authorized to close by law or executive order.

**1.12** **"Bar Date"** means March 29, 2019, the date by which proofs of Claim must be filed with the Bankruptcy Court.

**1.13** **"Case"** means this Chapter 11 Case.

**1.14** **"Cash"** means legal tender of the United States of America.

**1.15** **"Causes of Action"** means all claims and causes of action held by the Estate immediately prior to the Effective Date, including, but not limited to, any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, whether arising under any contract or under the Bankruptcy Code or other federal, state or other non-bankruptcy law, including, without limitation, any causes of action set forth in this Plan or Disclosure Statement and any Exhibits thereto and all Avoidance Actions, but excluding claims and causes of action and related recoveries specifically and expressly released, exculpated or waived pursuant to this Plan.

**1.16** **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtors on the Commencement Date, styled *In re Steve Shickles, Jr. and Ronda Shickle*s, Case No. 19-80155-CRJ11.

**1.17** **"Claim"** has the meaning set forth in Section 101 of the Bankruptcy Code.

**1.18** **"Class"** means any group of Claims or Equity Interest(s) classified by the Plan pursuant to Section 1122(a) of the Bankruptcy Code.

**1.19** **"Collateral"** means any property or interest in property of the Estate of the Debtors subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.20** **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.21** **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to

3

time.

**1.22** "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code..

**1.23** "**Court**" means the Bankruptcy Court.

**1.24** "**Debtors**" mean Steve Shickles, Jr., and Ronda Shickles.

**1.25** "**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.26** "**Disputed**" means, with respect to any Claim or Interest that has not been Allowed pursuant to the Plan or a Final Order,

(a) if no proof of claim has been filed by the applicable deadline: (i) a Claim or Interest that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim or Interest that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b) if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim or Interest for which no corresponding Claim or Interest has been or hereafter is listed on the Schedules; (ii) a Claim or Interest for which a corresponding Claim or Interest has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or Interest as asserted in the proof of claim varies from the nature and amount of such Claim or Interest as listed on the Schedules; (iii) a Claim or Interest for which a corresponding Claim or Interest has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim or Interest for which a timely objection or request for estimation is interposed which has not been withdrawn or determined by a Final Order.

**1.27** "**Distribution**" means cash required under the Plan to be distributed to the holders of Allowed Claims pursuant to the Liquidating Trust or account of an Allowed Claim or as otherwise allowed by Bankruptcy Court Order.

**1.28** "**Effective Date**" means the first Business Day after the Bankruptcy Court enters an Order confirming the Plan.

**1.29** "**Estate**" has the meaning set forth in Section 541 of the Bankruptcy Code.

**1.30** "**Final Distribution**" has the meaning set forth in Section 7.8 of Article VII.

**1.31** "**Final Order**" means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in this Chapter 11 Case which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move

for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired.

**1.32** "**General Unsecured Claim**" means any Claim against the Debtors that (i) is not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.33** "**Impaired**" has the meaning set forth in Section 1124 of the Bankruptcy Code.

**1.34** "**Insider**" has the meaning set forth in Section 101 of the Bankruptcy Code.

**1.35** "**Initial Distribution**" has the meaning set forth in Section 7.5 of Article VII.

**1.36** "**Interim Distributions**" have the meaning set forth in Section 7.6 of Article VII.

**1.37** "**Lien**" means any charge against, security interest in, encumbrance upon or other interest in property to secure payment of a debt or performance of an obligation.

**1.38** "**Liquidating Trust**" means that Trust Agreement dated July 16, 2019 between the Liquidating Trustee and the Debtors.

**1.39** "**Liquidating Trust Beneficiary** " means a beneficiary of the Liquidating Trust which holds an Allowed Claim and is subject to receiving a Distribution under the Liquidating Trust.

**1.40** "**Liquidating Trustee**" means Stuart Maples (the individual appointed to serve as trustee pursuant to the Plan) or any successor trustee, appointed pursuant to this Plan.

**1.41** "**Person**" has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**1.42** "**Petition Date**" means January 17, 2019, the date upon which the chapter 11 petition of Debtor was Filed with the Bankruptcy Court.

**1.43** "**Plan**" means this liquidating Chapter 11 plan of reorganization, including all exhibits, appendixes, and supplements hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.44** "**Plan Administration Account**" means the bank account into which the Liquidating Trustee shall deposit all funds from the administration or liquidation of the Liquidating Trust Assets or otherwise.

**1.45** "**Plan Proponents**" means the Debtors and Simple Helix.

5

**1.46** "**Priority Non-Tax Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.47** "**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.48** "**Pro Rata**" means proportionally, so that with respect to an Allowed Claim, the ratio of the amount of property distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is equal to the ratio of the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Claims in that Class (including Disputed Claims until disallowed).

**1.49** "**Professional Fee Claims**" has the meaning set forth in Section 2.2 of Article II.

**1.50** "**Settlement Agreement**" means that certain Settlement Agreement by and between the Debtors and Shickles Media, LLC and the Simple Helix Parties, as amended by that certain Addendum dated July 17, 2019.

**1.51** "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.52** "**Secured Claim**" means a Claim (i) secured by Collateral, to the extent of the value of such Collateral: (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Plan Proponents, prior to the Effective Date; (c) as agreed to by the holder of such Claim and the Liquidating Trustee following the Effective Date, or (d) as determined by a Final Order in accordance with Section 506(a) of the Bankruptcy Code; or (ii) secured by the amount of any rights of setoff of the holder thereof under Section 553 of the Bankruptcy Code.

**1.53** "**Simple Helix Parties**" means Simple Helix, LLC, Deep Blue Holdings, LLC, Alpha Hosting, LLC, The Westmoreland Company, Inc., 451 Press, LLC, Karl Leo, and Jada Leo.

**1.54** "**Tax Code**" means Title 26 of the United States Code, as amended from time to time.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1** **Administrative Expense Claims.** Except to the extent the Debtor or the Liquidating Trustee and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, each holder of an Administrative Expense Claim shall be paid, in full satisfaction of such Claim, an amount in Cash equal to the amount of such Administrative Expense Claim approved by the Court on the earlier of the date of entry of the order approving such Administrative Expense Claim or the Effective Date, or as soon thereafter as is reasonably practicable. Without limitation, all quarterly fees assessed under 28 U.S.C. § 1930(a)(7) shall be paid on the Effective Date, or as soon thereafter as reasonably practicable, and as they come due

6

thereafter.

**2.2** **Compensation and Reimbursement Claims.** All Claims for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code ("Professional Fee Claims") shall be paid in full in the amount approved by the Bankruptcy Court on the earlier of the date of entry of the order approving such Professional Fee Claim, the Effective Date, or as soon as is reasonably practicable thereafter from funds held in the Liquidating Trust established pursuant to this Plan and administered by the Liquidating Trustee. The entry of a Final Order approving a Professional Fee Claim shall constitute a release of any and all claims against such claimant relating to the subject matter of the services rendered. Presently, the Debtors estimate that the amount of accrued but unpaid Administrative Claims for Professional Fees that are owed Heard Ary & Dauro are $68,550 and the amount of Professional Fees due Jake Watson P.C. are $8,255.

**2.3** **Administrative Expense Claim Bar Date.** All persons and entities seeking an allowance of or reimbursement for an Administrative Expense Claim or a Professional Fee Claim shall file their respective final applications by the date that is twenty-eight (28) days after the Confirmation Date (the "Administrative Expense Claim Bar Date") or forever be barred from so doing.

**2.4** **Priority Tax Claims.** Pre-petition the Debtor's owed the Internal Revenue Service for federal income taxes in the amount of $7,271.86 for the years 2017 and 2018. In accordance with §1129(a)(9)(D), the total allowed portion of this claim that meets the definition contained in §507(a)(8) of the Bankruptcy Code shall and Allowed Claim and shall be amortized over a period of sixty (60) months with an interest rate of 5.00%. Debtors shall remit sixty (60) monthly payments in an amount to be determined.

Any tax debt owed by the Debtors to the IRS shall not be the subject of any discharge entered in this case. All such debt is non-dischargeable.

The Debtors reserve the right to prepay the portion of the IRS unsecured priority claim during the referenced payment period. During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtors fail to remit any monthly payment on the IRS unsecured priority claim as each payment becomes due; or, timely file any and all post-petition federal income tax returns by the due date for each respective tax period including any extensions and pay the taxes due on the return; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

For the tax periods listed on the amended claim, the time periods found at 26 U.S.C. 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan. For the tax periods listed on the claim filed by the IRS, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment period stated in this plan.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan designates the following classes of Claims and Interests, other than Administrative Claims, for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impaired/Unimpaired if Allowed | Entitled to Vote if Allowed |
|---|---|---|---|
| Class 1.1 Secured | BMW Bank of North America | Impaired | Yes |
| Class 1.2 Secured | Ally Bank | Impaired | Yes |
| Class 1.3 Secured | BMW Bank of North America | Impaired | Yes |
| Class 1.4 Secured | Ford Motor Credit Company | Impaired | Yes |
| Class 1.5 Secured | Mercedes-Benz Financial Services USA | Impaired | Yes |
| Class 1.6 Secured | Hilton Resorts Corporation | Impaired | Yes |
| Class 1.7 Secured | Redstone Federal Credit Union | Impaired | Yes |
| Class 1.8 Secured | PNC Bank | Impaired | Yes |
| Class 2 | Convenience Class of Unsecured Claims | Not Impaired | No |
| Class 3 | Certain Contingent Unsecured Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Simple Helix Parties Claim | Impaired | Yes |
| Class 6 | Interest Holder | Impaired | Yes |

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.0** **Class 1 – Allowed Secured Claims.**

Unless such holder agrees to other treatment (in which event, such other agreement shall govern), each holder of an Allowed Class 1 Claim shall be treated as follows:

**4.1** **BMW Bank**: This Class consists of the Secured Claim of BMW Bank of North America ("BMW") in the amount of $14,383.59 and is impaired. The Debtor is indebted to BMW pursuant to a vehicle loan for a 2018 BMW 2 Series Convertible 2D 230i ("BMW Convertible"). The value of this vehicle is approximately $28,000. This debt will be paid, settled and satisfied in

8

full from the sale proceeds of the BMW Convertible which is to be sold by the Liquidating Trustee pursuant to the terms of the Liquidating Trust. The creation of the Trust and its distribution schedule is discussed in the Implementation Section of this Plan. BMW will retain its lien upon this Collateral until such time as the debt is paid in full.

**4.2** **Ally Bank**: This Class consists of the Secured Claim of Ally Bank ("Ally") in the amount of $38,953.35 and is impaired. The Debtor is indebted to Ally pursuant to a vehicle loan for a 2017 Ford Transit Cuta VIN 1FDBW5PM0HKA17745 ("Ford Transit"). The value of the Ford Transit is approximately equal to the amount of the debt. Upon the Effective Date of the Plan the Debtors or the Liquidating Trustee shall abandon the Ford Transit to Ally as there is no equity in the it for the Estate, in full satisfaction of this Claim. Ally will retain its lien upon this Collateral until such time as the Ford Transit is surrendered to Ally.

**4.3** **BMW Bank**: This Class consists of the Secured Claim of BMW Bank of North America ("BMW") in the amount of $23,891.65 and is impaired. The Debtor is indebted to BMW pursuant to a vehicle loan for a 2018 BMW 4 Series Convertible 2D M4 ("BMW M4"). The value of this vehicle is approximately $55,000. This debt will be paid, settled and satisfied in full from the sale proceeds of the BMW M4 which is to be sold by the Debtors pursuant to the Bankruptcy Court's Order dated May 9, 2019 [Doc. 241]. The net sale proceeds will be paid over to the Examiner. BMW will retain its lien upon this Collateral until such time as the debt is paid in full.

**4.4** **Ford Motor Credit Company**: This Class consists of the Secured Claim of Ford Motor Credit Company ("Ford") in the amount of $17,616.79 which is impaired. The Debtor is indebted to Ford pursuant to a vehicle loan for a 2017 Ford Escape. The Debtors will pay, settle and satisfy this Debt over a 60 month period in monthly payments of $346.76 which includes interest at the contract rate of 0%. Ford will retain its lien upon this Collateral until such time as the debt is paid in full.

**4.5** **Mercedes-Benz Financial Services USA**: This Class consists of the Secured Claim of Mercedes-Benz Financial Services USA ("Mercedes") in the amount of $82,959 and is impaired. The Debtor is indebted to Mercedes pursuant to a vehicle loan for a 2018 Mercedes-Benz GS S550W4 ("Mercedes GS"). The value of this Mercedes GS is approximately equal to the amount of the debt. On April 26, 2019 the Bankruptcy Court entered an Order granting Mercedes relief from the automatic stay to liquidate the Mercedes GS in accordance with Alabama law. The claim is to be reduced to the amount paid with a balance of zero ($0) with leave to amend for any unsecured deficiency on or before July 26, 2019.

**4.6** **Hilton Resorts Corporation**: This Class consists of the Secured Claim of Hilton Resorts Corporation ("Hilton") in the amount of $33,403.63 and is impaired. The Debtor is indebted to Hilton pursuant to a promissory note and mortgage for a floating week vacation ownership in Orlando, Florida ("Timeshare"). The Debtors believe that the value of the Timeshare is approximately equal to the amount of the debt. Upon the Effective Date of the Plan the Debtors shall transfer all interest in this Timeshare to the Liquidating Trusteed pursuant to the terms of the Liquidating Trust. The creation of the Trust and its distribution schedule is discussed in the Implementation Section of this Plan. The Liquidating Trustee shall determine whether the Timeshare shall be liquidated or abandoned. This creditor will retain its lien upon this collateral until such time as the Timeshare is sold or surrendered.

9

**4.7     Redstone Federal Credit Union**: This Class consists of the Secured Claim of Redstone Federal Credit Union ("RCFU") in the amount of $111,834.55 and is impaired.  The Debtor is indebted to RCFU pursuant to a vehicle loan for a 2017 Tiffin Allegro 34PA Motor Home ("RV"). The value of this vehicle is approximately $130,000.  This debt will be paid, settled and satisfied in full from the sale proceeds of the RV which is to be sold by the Debtors pursuant to the Bankruptcy Court's Order dated May 9, 2019 [Doc. 242].  The net sale proceeds are to be paid over to the Examiner.   This creditor will retain its lien upon this Collateral until such time as the debt is paid in full.

**4.8     PNC Bank**: This Class consists of the Secured Claim of PNC Bank ("PNC") in the amount of $273,505.76 and is impaired.  The Debtor is indebted to PNC pursuant to a promissory note and mortgage which secures their Residence located at 40 Verdant Circle Huntsville, Alabama ("Residence"). The value of this Residence is approximately $628,600.  This debt will be paid, settled and satisfied in full through the sale of the Residence by the Liquidating Trustee as provided for through the Liquidating Trust.  This creditor will retain its lien upon this Collateral until such time as the debt is paid in full.

**4.9     Class 2 – Convenience Class of Unsecured Claims.**

This Class consists of a Convenience Class of Allowed Unsecured Claims in the amount of $250 or less.  Unless such holder agrees to other treatment (in which event, such other agreement shall govern), upon payment or satisfaction in full of Allowed Claims in Class 1, each holder of an Allowed Class 2 Claim shall receive on the Effective Date, in full satisfaction of such Claim, an amount in Cash equal to one hundred percent (100%) of the Allowed Amount of such Claim. The Claims in Class 2 are not impaired under this Plan.  Therefore, pursuant to Section 1126(f) of the Bankruptcy Code, the holders of Class 2 Claims are conclusively presumed to have accepted this Plan .

**4.10     Class 3 – Certain Contingent Unsecured Claims.**

Class 3 consists of (i) American Express Claim No. 7 ($37,032); (ii) BancorpSouth ($25,596); and (iii) First Bank Claim No. 20 ($11,366,235) which are contingent, unliquidated and disputed claims.  The total amount of these Claims is approximately $11,428,863. These Claims arise from personal guaranty agreements or obligations signed or incurred by Steve while employed at Simple Helix for debts which are being paid by Simple Helix.  Simple Helix is currently paying these Claims.  In the event, however, that one or more of these claims is ever determined be an Allowed Claim, then in such event said creditor will be paid .001 percent of said Allowed Claim from the Liquidating Trust established pursuant to this Plan and administered by the Liquidating Trustee. In the event that the is unable to make such a payment said payment would be made from Steve's projected disposable income pursuant to § 1129(a)(15) of the Bankruptcy Code (which incorporates the calculation of Disposable Income of § 1325) over a five year period beginning commencing 36 months from the Effective Date of the Plan in monthly installments.

**4.11     Class 4 – Allowed General Unsecured Claims.**

Class 4 consists of all Allowed General Unsecured Claims.  The total amount of unsecured claims are approximately $11,126,850.  These claims are of every kind and nature, whether or not

a proof of claim was filed in this case, including but not limited to, all claims arising from personal guarantees, rents, mechanic liens, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims, unsecured tax claims, and damages arising from or related to any liquidated or contingent claim. It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court.

Unless such holder agrees to other treatment (in which event, such other agreement shall govern); the holders of Allowed General Unsecured Claims, without priority, shall receive, in full satisfaction of such Claim, a Distribution from the Liquidating Trust established pursuant to this Plan and administered by the Liquidating Trustee equal to 10% of their Allowed Claim. The Liquidating Trust is further discussed herein in Article VI Implementation of the Plan below. This Distribution is expected to be made within 30 days from the Effective Date of the Plan.

### 4.12    Class 5 – Simple Helix Parties Claim.

The holders of the Class 5 Claim consist of Simple Helix Parties is impaired. Class 5 creditor in this Class shall receive, in full satisfaction of such Claim the following:

(i)    Entry of a non-dischargeable judgment in the amount of $13,000,000.00 pursuant to section 523(a) of the Bankruptcy Code in favor of Simple Helix against Debtor Steve Shickles, Jr. (the "Judgment"). For the remainder of 2019, Steve shall pay Simple Helix a sum equal to 25% of his gross income from his employment. Commencing in 2020, Steve shall pay to Simple Helix the greater of 25% per year of his gross annual income or $25,000 (which minimum sum shall permanently increase to $50,000 per calendar year once Steve's annual income equals or exceed $200,000 per year for two consecutive years). In the event Steve's annual income drops below $200,000 per year, for two consecutive years, then Steve shall pay to Simple Helix the greater of 25% per year of his gross annual income or $25,000. Steve shall make the payments to Simple Helix in periodic payments consistent with the same schedule on which Debtor is paid any income. Provided that Steve pays to Simple Helix the aggregate sum of $7,475,000.00 within ten (10) years from the date of the Judgment, in the amounts provided for in this paragraph including any balloon payment, if necessary, the Judgment shall be deemed satisfied and Simple Helix will file such satisfactions and releases in the public record to reflect same.

(ii)    The Simple Helix Parties shall also be a Liquidating Trust Beneficiary and be entitled to receive Distributions under the Liquidating Trust pursuant to Article IV of the Liquidating Trust Agreement. The Simple Helix Parties shall give credit against the Judgment for any amounts received by the Simple Helix Parties under the Liquidating Trust from the liquidation of the Debtors' assets.

(iii)    So long as Debtor makes the minimum yearly payments, he may elect, upon written notice to the Simple Helix Parties, to extend the time to pay the $7,475,000 release amount, for an additional five (5) year period.

(iv)    The remaining terms of the Settlement Agreement, a copy of which was attached to the Disclosure Statement, are incorporated herein.

### 4.13    Class 6 - Interest Holder.

11

This Class 6 consists of the Claim of Steve and Ronda Shickles as the Debtors and Debtors in Possession.  The Shickles are not retaining any assets or property above their exemptions as allowed under federal and state law.  Claims in Class 6 are Impaired under this Plan.  Therefore, pursuant to Section 1126(a) of the Bankruptcy Code, the holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

## ARTICLE V
## VOTING OF CLAIMS

**5.1**  **Voting of Claims**.  Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote to accept or reject this Plan. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

**5.2**  **Acceptance by a Class of Creditors**.  Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided for in Section 1126(e) of the Bankruptcy Code, a Class of Claims or Interests shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims or Interests of such Class that have timely and properly voted to accept or reject this Plan.

**5.3**  **Presumed Acceptance of Plan**.  All Classes of Claims that are designated as unimpaired under this Plan are presumed to accept the Plan.  Nonetheless, the Plan proposes that all Classes of Claims also shall be permitted to vote on the Plan, based upon the possibility that one or more Classes of Claims ultimately is determined to be Impaired.

**5.4**  **Cram Down**.  In the event one or more Classes of Claims entitled to vote on the Plan votes to reject the Plan, the Plan Proponents shall utilize the "cram down" provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan.

## ARTICLE VI
## THE IMPLEMENTATION OF THE PLAN

**6.1**  **Implementation**.  This Plan will be implemented through the creation of a Liquidating Trust pursuant to a Liquidating Trust Agreement dated July 16, 2019 between the Liquidating Trustee and the Debtors.  A copy of the Liquidating Trust Agreement is attached to the Disclosure Statement as Exhibit 1 to the Disclosure Statement.  Upon confirmation of this Plan the Debtors and the Liquidating Trustee shall be authorized to execute the Liquidating Trust Agreement and to otherwise carryout the terms of the Liquidating Trust Agreement.

**6.2**  **Relocation Funds**.  Upon approval from the Bankruptcy Court of the settlement agreement between the Debtors and the Simple Helix Parties as supplemented by the Addendum thereto, the Debtors shall be allowed to use the sum of $10,000 from Liquidating Trust  for the purposes of relocation, and to pay rent, food, telephone, gasoline, deposits etc. as the Debtors determine are necessary and best for their family.  The Liquidating Trustee is authorized to make this disbursement to the Debtors.  Except as set forth herein, this payment shall be in lieu of

12

requesting any additional access to funds in either the Bankruptcy Examiner's account or the Liquidating Trust for additional expenditures from July 15, 2019 forward.

**6.3**     **Transfer of Assets to Trust**.  Upon the Effective Date of the Plan the Debtors, in their respective capacities as debtors-in possession on behalf of their Estates, shall transfer, assign, and deliver to the Liquidating Trustee, without recourse, all of their respective rights, title, and interests in and to the real and personal property owned by them as of January 17, 2019 (hereinafter "Liquidating Trust Assets") **except for** certain personal property identified on Schedules attached to the Disclosure Statement free and clear of any and all Liens, Claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons and Entities, except for the liens securing certain Liquidating Trust Assets. All of the proceeds received from the sale, transfer or other disposition of the Liquidating Trust Assets (including the prosecution or settlement of any Cause of Action; collectively, the "Liquidating Trust Proceeds") shall be added to the Liquidating Trust Assets and held as a part thereof (and title thereto shall be vested in the Liquidating Trust), and shall be distributed in accordance with the Liquidating Trust. [1]

**6.4**     **Purpose of Trust**.  The purpose of the Liquidating Trust is upon the Effective Date of the Plan to (i) administer the Liquidating Trust Assets, (ii) oversee and direct the expeditious but orderly liquidation of the Liquidating Trust Assets, and (iii) make all distributions to the Liquidating Trust Beneficiaries. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671 through 677 of the Internal Revenue Code of 1986.

**6.5**     **Appointment of Trustee**.  The Liquidating Trustee shall be appointed as of the Effective Date and shall retain and have all of the rights, powers and duties necessary to carry out his, her, or its responsibilities as trustee under this Plan.  Those rights and duties are expressly provided for in the Liquidating Trust Agreement and incorporated herein by reference.

**6.6**     **Neutral and Independent**.  The Liquidating Trustee shall be a neutral and independent trustee. The Liquidating Trustee's duties shall run to the Estate and the Liquidating Trustee shall administer the Estate for the purpose of maximizing the return to the Liquidating Trust Beneficiaries as a whole and not to any individual creditor or Claim.

**6.7**     **Compensation**.  The Liquidating Trustee shall receive, for the Liquidating Trustee's services, payable after the Liquidating Trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the Liquidating Trustee to the Liquidating Trust Beneficiaries.

---

[1] The Debtors have previously allowed the Liquidating Trustee to take possession of all personal property which they owned prior to January 17, 2019 other than that personal property which the Debtors are allowed to keep as exempt property under Alabama state law.  The schedules of the property being retained by the Debtors (2.01-2.03) is attached to the Debtors Disclosure Statement.

13

**6.8** **Professionals**. Subject to Bankruptcy Court approval, the Liquidating Trustee may employ, retain, and replace such persons, including actuaries, attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants and advisors as necessary to discharge the duties of the Liquidating Trustee under this Plan and, subject to Bankruptcy Court approval, and in accordance with such compensation procedures as may be approved by the Bankruptcy Court, pay the reasonable fees and costs of such employment; provided, further, that, if the Liquidating Trustee is an individual, the Liquidating Trustee may, subject to Court approval, retain the professional firm with which he or she is associated, provided that the compensation and reimbursement of such firm's fees and expenses is at standard rates.

**6.9** **Bond Not Required**. The Liquidating Trustee (including any successor Liquidating Trustee) shall not be required to post a bond in connection with his/her/its obligations under the Plan.

**6.10** **Resignation, Death, Dissolution or Removal of Liquidating Trustee**. The Liquidating Trustee may resign or be removed as provided for in the Liquidating Trust Agreement the terms of which are incorporated herein by reference.

**6.11** **Plan Administration Account**. The Liquidating Trustee shall cause to be deposited into an interest bearing account (the "Plan Administration Account") all funds administered by the Liquidating Trustee including, but not limited to the sale proceeds from the Liquidating Trust Assets. The Plan Administration Account shall be used to make the Distributions and other disbursements made by the Liquidating Trustee.

**6.12** **Distributions**. The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries as provided for in Article IV of the Liquidating Trust Agreement which terms are incorporated herein by reference.

**6.13** **Post-Confirmation Reports and Fees**. All accrued and unpaid fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court on the Confirmation Date, will be paid on the Effective Date. Subsequent to the Effective Date, the Liquidating Trustee shall be responsible for the filing of all post-confirmation reports with the Bankruptcy Administrator and for arranging for payment from the Liquidating Trust of all post-confirmation fees charged or assessed against the Estate pursuant to 28 U.S.C. § 1930.

**6.14** **Post-Confirmation Fees, Compensation, Costs, and Expenses**. Subject to Court approval, the Liquidating Trustee shall cause to be paid from the Liquidating Trust all fees, costs, and expenses related to the implementation of the Plan, including without, limitation, the fees and expenses of the professionals retained by the Liquidating Trustee, as the case may be. The Liquidating Trustee and any retained professionals of the Estate may apply to the Court for the entry of a compensation procedures order similar to the Court's Order Approving Procedures for Payment of Interim Compensation of Professionals entered February 5, 2019 [Docket No. 94], such that the fees and expenses may be paid monthly or on such schedule as the Liquidating Trustee may, from time to time establish.

14

**6.15** **Compliance with Tax Requirements**. The Liquidating Trustee must comply with Section III "Tax Matters" of the Liquidating Trust. In furtherance thereof and to the extent not inconsistent with those requirements, the Liquidating Trustee shall comply with all reporting requirements imposed by federal, state or local taxing authorities in connection with making Distributions pursuant to this Plan and shall be authorized to take any and all action necessary and appropriate to comply with such requirements. As a condition to making any Distribution under this Plan, the Liquidating Trustee may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting laws. Notwithstanding any other provision of this Plan, each entity receiving a Distribution of Cash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

**6.16** **Insurance**. The Liquidating Trustee may purchase insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its gross negligence or willful misconduct, with respect to the implementation and administration of the Plan.

**6.17** **Information**. The Liquidating Trustee shall provide such information to the Liquidating Trust Beneficiaries, Debtors and parties in interest, as they may reasonably request and in a timely manner. Information may be provided informally, such as by e-mail, or in the form of a quarterly or annual report.

**6.18** **Post-Confirmation Disputes**. In the event there is a dispute regarding an action taken by the Liquidating Trustee, the Debtors, or any party in interest may file a motion or an application with the Bankruptcy Court to resolve the dispute and to authorize the action in question.

**6.19** **Conflicts of Interest**. If the Liquidating Trustee determines, in the exercise of the Liquidating Trustee's reasonable discretion, that he has a material conflict of interest with respect to the settlement of a Claim, the resolution or prosecution of litigation or any other matter, the Plan Proponents shall exercise the Liquidating Trustee's rights and authorities with respect to such matter. If neither the Liquidating Trustee nor the Plan Proponents are able to act with respect to the settlement of a Claim, the resolution or prosecution of litigation or any other matter, the Liquidating Trustee may request the Court to approve the Plan Proponents' choice of a designee to act with respect to such matter, with such designee's authority to terminate upon the matter's conclusion. If the Plan Proponents determine, in the exercise of their mutual and reasonable discretion, that they have a material conflict of interest, the Liquidating Trustee may apply to the Bankruptcy Court to approve or authorize an action, in lieu of obtaining the approval or consent of the Plan Proponents.

**6.20** **Authority**. The Confirmation Order shall constitute full and complete authority for the Plan Proponents and the Liquidating Trustee to take all other actions that may be necessary, useful or appropriate to consummate this Plan without any further corporate or judicial authority, except as otherwise provided by the Plan or the Confirmation Order.

15

**6.21** **Duration**. The duration of the Liquidating Trust shall be as provided for in Article VII of the Liquidating Trust Agreement. The Liquidating Trustee shall file a Motion for Entry of Final Decree prior to closing the Bankruptcy Case pursuant to Section 350(a) of the Bankruptcy Code.

**6.22** **Indemnification**. The Liquidating Trustee, and his agents and professionals, shall not be liable for actions taken or omitted in connection with the implementation of the Plan, except those acts arising out of his own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his actions or inactions, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim shall be satisfied out of the Plan Administration Account. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

**6.23** **General Reservation of Rights**. Unless expressly and unequivocally released in this Plan, nothing contained in this Plan shall be deemed to be a waiver or relinquishment or release of any Claims, Causes of Action, or Avoidance Actions that the Liquidating Trustee may choose to assert on behalf of or for the benefit of the Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. All Causes of Action, Avoidance Actions, Claims, crossclaims, setoffs, defenses and counterclaims of the Debtors or the Estate of any kind or nature whatsoever including, without limitation, those against third parties arising before the Effective Date that have not been disposed of prior to the Effective Date shall be preserved and retained for enforcement by the Liquidating Trustee for the benefit of the Estate as set forth in this Plan, except to the extent expressly and unequivocally released or enjoined by this Plan or pursuant to a Final Order.

**6.24** **Causes of Action**. Without limitation of the foregoing, pursuant to Section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, and his successors and assigns, shall retain and be empowered and authorized to enforce, for the benefit of the Estate: (a) all Causes of Action against any former or current agent, Insider or Affiliate of the Debtors, as those terms are defined in the Bankruptcy Code or the Plan, arising under applicable non-bankruptcy law under either federal or state law; and against any professional retained by the Debtors prior to the Petition Date for malpractice, overbilling, or negligence or other torts, contract claims, or equitable claims, including any lawyer, law firm, accountant, accounting firm, consultant or consulting firm or investment banker or investment banking firm for services performed prior to the Petition Date, except for those professionals retained and authorized to serve in this Chapter 11 Case pursuant to Bankruptcy Court order; and, (b) all other Causes of Action and related recoveries of any nature or type whatsoever, at law or in equity, against any Person or entity. The Causes of Action the Liquidating Trustee shall retain and be entitled to enforce shall include, without limitation: (i) all Claims and Causes of Action against Insiders and Affiliates; (ii) all Claims and Causes of Action against current and former employees, consultants, independent contractors, and persons acting for or in concert with them; (iii) all Claims and Causes of Action for fraud, for recovery of unlawful distributions to members, misappropriation of trade secret or confidential information, embezzlement, defalcation, breach of fiduciary duty, breach of employment agreements, unfair

16

competition, breach of contract, indemnity, contribution, and reimbursement; (iv) all Claims and Causes of Action against persons to whom a subpoena has been issued by the Bankruptcy Court in the Bankruptcy Case; and, (v) all Claims and Causes of Action identified in the Disclosure Statement, and the Confirmation Order.

6.25 **Avoidance Actions**. Furthermore, except as specifically released or enjoined by the Plan or pursuant to a Final Order, the Liquidating Trustee shall retain and be entitled to enforce for the benefit of the Estate all Avoidance Actions and other Cases of Action, including, but not limited to, Avoidance Actions and other Causes of Action against the following Persons or entities: (a) any Person or entity who received a payment or property from the Debtors to or for their benefit on account of an antecedent debt owed by the Debtors within ninety (90) days of the Petition Date, including, but not limited to, those persons or entities identified, or that could be identified, in response to Question 3(a) on Debtors' Statement of Financial Affairs Filed with the Bankruptcy Court; (b) any Insider of the Debtors, as that term is defined by the Bankruptcy Code, who received a payment or transfer of property from the Debtors to or for their benefit on account of an antecedent debt owed by the Debtors within one year of the Petition Date; and, (c) any Person or entity who received a transfer of property from the Debtors or from whom the Debtors assumed an obligation, including, without limitation, all Insiders and Affiliates, together with (i) their officers, directors, and members; and, (ii) all parties acting in concert with them. Regardless of whether or not a Person or entity is identified as a recipient of a payment or other transfer of property from the Debtors or the transferor of obligation to the Debtors in the Debtors' Statement of Financial Affairs Filed with the Bankruptcy Court, all Causes of Action and Avoidance Actions against any Persons or entities shall be reserved and retained for enforcement by the Liquidating Trustee, for the benefit of the Estate.

6.26 **Substitution of Trustee**. Upon the Effective Date, the Liquidating Trustee shall automatically be substituted for the Debtors as the Plaintiff in any action in which the Debtors were the Plaintiff. Nothing in the Plan prejudices any party's positions with respect to jurisdictional, substantive, and procedural issues pertaining to the Causes of Action and other claims described in this Article VI.

## ARTICLE VII
## PROVISIONS GOVERNING MANNER OF DISTRIBUTIONS

7.1 **Distribution Schedules**. As part of the Plan, the Debtors, subject to the review and approval of the Simple Helix Parties, which may not be unreasonably withheld, shall prepare schedules of Distributions with respect to each Class of Claims and Interests, including Disputed Claims and Claims Reserve as defined in Section 7.4 of the Plan. Upon his appointment, the Liquidating Trustee may revise such schedules, as necessary to carry out his duties under the Plan. Except as otherwise agreed by the affected Claimant, or as estimated under a Final Order, and except for those Creditors in Class 3, the entire amount of a Disputed Claim shall be included in the Distribution Schedules for purposes of computing the Distributions payable under the Plan, and the Debtors or the Liquidating Trustee, as the case may be, shall reserve such funds as necessary on account of Disputed Claims in accordance with Section 7.4 of this Plan. Copies of the Distribution Schedules shall be made available, upon request, to any party in interest, in electronic form.

17

**7.2     Reliance on Schedules and Claims Register**.  In making Distributions under this Plan, the Debtors or the Liquidating Trustee, as the case may be, may rely upon the accuracy of the Schedules and of the claims register maintained by the Bankruptcy Court as such claims register may be modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

**7.3     Setoffs**.  Subject to Section 553 of the Bankruptcy Code, in the event the Estate has a claim or Cause of Action of any nature whatsoever against a holder of a Claim, the Debtors or Liquidating Trustee may, but is not required to, set off or recoup the Debtors' claim or Cause of Action against such Claim (and any Distributions or other rights to receive property arising out of such claim under this Plan) unless any such claim or Cause of Action of the Debtors is or will be released under this Plan. Neither the failure to set off nor the allowance of any claim under this Plan shall constitute a waiver or release of any claim or Cause of Action of the Debtors.

**7.4     Claims Reserve**.  Prior to the making of any Distribution, the Debtors or, as the case may be, the Liquidating Trustee shall establish and maintain a reserve (the "Claims Reserve") for such amounts as may be reasonably necessary to account for Disputed Claims except for those Creditors in Class 3; for all Priority Tax Claims; for all Administrative Expense Claims (including quarterly fees payable under 28 U.S.C. § 1930); and, for all Professional Fee Claims. The Claims Reserve Amount shall be included in the Distribution Schedules such that sufficient funds are reserved for such Claims and available to address all contingencies. Because the Initial Distribution may be made prior to the Administrative Claims Bar Date, the Claims Reserve shall include an estimate of the Administrative Expense Claims.

**7.5     Initial Distribution**.   Not later than 90 days from the Effective Date, the Liquidating Trustee shall make an initial Distribution (the "Initial Distribution") of Cash to holders of Allowed Claims, in the order of their priority. The Initial Distribution shall be deemed to have been made immediately prior to the occurrence of the Effective Date.

**7.6     Interim Distributions**.  Depending on the sufficiency of Available Funds, and the administrative cost associated therewith, the Liquidating Trustee may make interim distributions ("Interim Distributions") from the Plan Administration Account to the Liquidating Trust Beneficiaries, in the order of their priority.  The Liquidating Trustee, to the extent reasonably practicable, shall make at least one Interim Distribution per calendar year.

**7.7     Final Distribution**.  Upon the resolution of all contingencies and the repayment in full of all compensation, costs, and expenses, all taxes, and other costs and expenses associated with the performance or completion of performance under the Plan, the Liquidating Trustee shall make a final Distribution (the "Final Distribution") of Cash from the Plan Administration Account to holders of Allowed Claims, in the order of their priority. The Final Distribution shall be made in the same order as the Initial Distribution and the Interim Distribution such that all Allowed Claims are paid.

**7.8     Distributions of Cash**.  Any Cash payment to be made hereunder may be made by check or wire transfer.

**7.9     Delivery of Distributions and Undeliverable Distributions.**     Subject to

18

Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors, prior to the Effective Date, or the Liquidating Trustee, subsequent to the Effective Date, has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any Distribution to any holder is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtors or the Liquidating Trustee, as the case may be, is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made. Thereafter, any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Liquidating Trustee, the Debtors, and their property and the amount otherwise payable on account of such Claim shall be included in the funds available to make the Final Distribution.

      **7.10**   **Time Bar to Cash Payments.**  Checks issued by the Debtors or Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Debtors or Liquidating Trustee only, by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the 90 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the funds available for Distribution under the Plan and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Estate, the Liquidating Trustee, the Debtors, and their property.

      **7.11**   **Transactions on Business Days**.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

      **7.12**   **Other Payments.** This Article relates to the timing of Distributions with respect to Classes of Claims. All other Claims, fees, and expenses due to be paid under the Plan shall be timely paid in the manner provided in the applicable provisions of the Plan.

**ARTICLE VIII**
**PROCEDURES FOR DISPUTED CLAIMS**

      **8.1**   **Objections to Claims**.  Objection to claims may be filed by either the Debtors or the Liquidating Trustee.  All objections to Claims shall be served and filed on or before the later of: (i) 30 days after the Confirmation Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

      **8.2**   **No Distribution Pending Allowance**.  Except as otherwise authorized and directed by the Court, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes

Case 19-80155-CRJ11   Doc 364   Filed 07/17/19   Entered 07/17/19 11:24:55   Desc
Main Document    Page 19 of 28

an Allowed Claim. Until such time, the Liquidating Trustee shall withhold from the property to be distributed to holders of such Claim the portion of such property allocable to such Claim, pending disposition of such claim by the Bankruptcy Court.

**8.3** **Allowance of Disputed Claims.** If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall, on or before twenty-one (21) calendar days following the day in which the Disputed Claim becomes an Allowed Claim, distribute to the holder thereof the Distribution that such holder would have received had its Claim been Allowed on the Effective Date.

**8.4** **Tax Reporting and Compliance.** The Liquidating Trustee is hereby authorized to request an expedited determination under Section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

**8.5** **Compromise of Claims Relating to Professional Fee Claims.** Before the Effective Date, a Disputed Professional Fee Claim may be compromised with the consent of the holder of the Claim and the Debtors. After the Effective Date, a Disputed Professional Fee Claim may be compromised with the consent of the holder of the Claim and the Liquidating Trustee. For each compromised claim, the Debtors or Liquidating Trustee, as applicable, shall file a notice with the Bankruptcy Court stating, the name of the holder of the Claim, the nature of the Claim, and the Allowed amount. A notice of compromise shall be served on all parties that have appeared in the case. Any objection to the proposed compromise, which may be made by any party in interest, must be filed on or before the expiration of 14 days from the date of service.

**8.6** **Allowance Pursuant to Plan.** Any creditor that desires for its Claim to be Allowed prior to the Effective Date pursuant to the Plan and Confirmation Order may file a motion for the Allowance of such Claim, on or before 3 days prior to the date of the Confirmation Hearing, together with such affidavits and the backup information as is necessary for the Bankruptcy Court to consider, determine, and adjudicate such Claim at the Confirmation Hearing. The filing of such a motion is optional, and the failure to file such motion shall not prejudice the rights of the holder of such Claim or result in the disallowance of such Claim.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1** **Executory Contracts and Unexpired Leases**. On the Effective Date, all executory contracts and unexpired leases to which the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under Section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

## ARTICLE X
## EFFECTIVENESS OF THE PLAN

**10.1** **Conditions Precedent to Confirmation of Plan**. The following are conditions

Case 19-80155-CRJ11    Doc 364    Filed 07/17/19    Entered 07/17/19 11:24:55    Desc
Main Document    Page 20 of 28

precedent to the occurrence of the Confirmation Date: (a) The entry of a Final Order finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code which order shall be in form and substance reasonably satisfactory to the Plan Proponents; (b) The proposed Confirmation Order shall be, in form and substance, reasonably acceptable to the Plan Proponents; and (c) All provisions, terms and conditions of this Plan are approved in the Confirmation Order.

**10.2** **Effective Date and Conditions Precedent to Effective Date**. Upon the occurrence of the Effective Date, the Debtors, in consultation and with the consent of the Simple Helix Parties, immediately shall file with the Bankruptcy Court a notice that the Effective Date has occurred. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing: (a) The Confirmation Order shall have been entered; (b) No stay of the Confirmation Order shall be in effect; and, (c) Available Funds shall be sufficient to make all required payments on the Effective Date; to fund a reserve for Professional Fee Claims, Administrative Expense Claims, and Priority Tax Claims.

**10.3** **Satisfaction of Conditions.** Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decides that one of the conditions precedent set forth in Section 10.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors, in consultation and with the consent of the Simple Helix Parties shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**10.4** **Effect of Nonoccurrence of Conditions to Consummation.** If each of the conditions to consummation and the occurrence of the Effective Date shall not been satisfied or duly waived on or before the first Business Day that is twenty-eight (28) days after the Confirmation Date, or such later date as the Bankruptcy Court may establish, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, the Liquidating Trustee shall have no obligation under the Plan, including, without limitations, any obligation to make or cause to be made any payment or Distribution, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtors.

## ARTICLE XI
## EFFECT OF CONFIRMATION AND RETENTION OF JURISDICTION

**11.1** **Binding Effect**. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors and every holder of a Claim against the Debtors, whether or not the Claim of such holder is impaired under the Plan and whether or not such Claim holder has accepted the Plan.

**11.2** **Full and Final Satisfaction**. The treatment of Claims provided in this Plan shall be in full and final satisfaction and settlement of all Claims against the Estate and the Debtors. Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and liabilities against the Estate arising on or before the Effective Date, including any liabilities accrued after the

Case 19-80155-CRJ11    Doc 364    Filed 07/17/19    Entered 07/17/19 11:24:55    Desc
Main Document      Page 21 of 28

Filing Date.

**11.3 Discharge**. Upon a certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtors shall receive a discharge of any and all debts of the Debtors that arose at any time before Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 1141(d)(1) and (d)(5) of the Code **excluding, however,** the debt owed by Debtors to the Simple Helix Parties, which debt is non-dischargeable under §523 of the Bankruptcy Code as well as the claim of the United States of America – Internal Revenue Service. The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefore was filed, whether the Claim is an allowed claim, whether the claim is properly scheduled or whether the holder thereof votes to accept the Plan. The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtors or their assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.

**11.4 INJUNCTION.** EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND AFTER THE EFFECTIVE DATE ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTORS ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS OR THEIR ESTATE, OR ANY OF THEIR PROPERTIES ON ACCOUNT OF ANY SUCH CLAIMS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN, PROVIDED HOWEVER, THAT NOTHING CONTAINED IN THIS PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.

**11.5 Tax Injunction.** In accordance with Section 346 of the Bankruptcy Code for purposes of any state or local law imposing a tax, income will not be realized by the Debtors or by reason of forgiveness or discharge of indebtedness resulting from the Case. As a result, each state or local taxing authority is permanently enjoined and restrained, after the Confirmation Date, from commencing, continuing or taking any act to impose, collect or recover in any manner any tax against the Debtors arising by reason of the forgiveness or discharge of any such tax under this Plan. Notwithstanding any other provision of this Plan, each Person or entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the payment and satisfaction of tax Claims or obligations imposed by any Governmental Unit on account of, arising out of or related to any such Distribution, including, without limitation, income and withholding taxes.

**11.6    Term of Injunctions or Stays.**  Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during this Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of this Chapter 11 Case.

**11.7    Injunction Against Interference with Plan.**  Upon the entry of the Confirmation Order, the Debtors, all holders of Claims, and all other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**11.8    Jurisdiction of Bankruptcy Court.**  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to this Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)  To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(b)  To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(c)  To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)  To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)  To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(f)  To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(g)  To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(h)  To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)  To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the

23

Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j) To hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses;

(k) To recover all assets of the Debtors or property of the Estate, wherever located;

(l) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(n) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code; and

(o) To enter a final decree closing this Chapter l 1 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1     Substantial Consummation**.  The Plan shall be deemed to be substantially consummated when the Debtors make the Initial Distribution.

**12.2     Effectuating Documents and Further Transactions**.  The Debtors and the Liquidating Trustee are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to implement the Plan.

**12.3     Exemption from Transfer Taxes**. Pursuant to Section 1146(c) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan or the Liquidating Trust Agreement shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.4     Modification of Plan.**  Upon reasonable notice, the Plan may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims under the Plan, the Plan Proponents (pre-Effective Date) or the Liquidating Trustee (post Effective Date) may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Plan Proponents may make appropriate technical

adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

**12.5    Revocation or Withdrawal of Plan.**   The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date for good cause shown. If the Plan Proponents take such action, subject to the conditions set forth above, the Plan shall he deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any creditor or any other person in any further proceedings involving the Debtors.

**12.6    Disputes Among Plan Proponents.**   In the event of a disagreement or dispute between or among the Plan Proponents, or any of them, regarding an action that shall or may be taken, or a document that shall or may be filed, pursuant to the Plan, a Plan Proponent may apply to the Bankruptcy Court for an Order authorizing such action to be taken, or document to be filed, on behalf of the Plan Proponents.

**12.7    Courts of Competent Jurisdiction.**   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.8    Severability.**   If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.9    Governing Law.**   Except to the extent the Bankruptcy Code or other federal or state law is applicable, or as otherwise specifically set forth herein, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

**12.10    Exhibits.**   All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.11    Successors and Assigns.**   All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs,

executors, administrators, successors, or assigns of such person.

**12.12** __Time__.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.13** __Standing.__  Any creditor or party in interest may appear and be heard on any issue in this Case.

**12.14** __Notice.__  Any notice required to be given pursuant to the terms of this Plan shall be given to the following addresses by first class mail and electronic mail.

If to the Debtors:

> Steven Shickles, Jr.
> Ronda Shickles
> c/o Kevin D. Heard, Esq.
> Heard, Ary & Dauro, LLC
> 303 Williams Avenue SW, Suite 921
> Huntsville, Alabama 35801
> kheard@heardlaw.com

If to the Liquidating Trustee:

> Stuart M. Maples
> Maples Law Firm, PC
> 200 Clinton Avenue West, Suite 1000
> Huntsville, Alabama 35801
> smaples@mapleslawfirmpc.com

If to the Simple Helix Parties:

> Kevin C. Gray
> BRADLEY ARANT BOULT CUMMINGS LLP
> 200 Clinton Avenue W, Suite 900
> Huntsville, AL 35801
> kgray@bradley.com

Respectfully submitted on this 15th of July, 2019.

> _/s/Steven Shickles, Jr._
> Steven Shickles, Jr.

> _/s/Ronda Shickles_
> Ronda Shickles

/s/ Kevin D. Heard
Kevin D. Heard
Angela S. Ary
Attorneys for Debtors

Of counsel:
HEARD, ARY & DAURO, LLC
303 Williams Avenue
Park Plaza, Suite 921
Huntsville, Alabama 35801
Phone: (256) 535-0817
kheard@heardlaw.com
aary@heardlaw.com

Simple Helix, LLC

By:      /s/Simple Helix, LLC

/s/ Kevin C. Gray
Kevin C. Gray
Andrew J. Shaver
Attorneys for the Simple Helix Parties

Of counsel:
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue W, Suite 900
Huntsville, AL 35801
Telephone: (256) 517-5100
kgray@bradley.com
ashaver@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July,  2019, I served a copy of the foregoing on the parties listed below and on the attached matrix by either depositing the same in the United States

Mail, postage prepaid and properly addressed or via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**<u>Notice, via the CM/ECF System, will be electronically mailed to:</u>**

Richard M Blythe <u>Richard_Blythe@alnba.uscourts.gov</u>, <u>courtmaildec@alnba.uscourts.gov</u>

Kevin C Gray on behalf of the Simple Helix Parties <u>kgray@bradley.com</u>

Andrew J. Shaver on behalf of the Simple Helix Parties <u>ashaver@bradley.com</u>

Stuart M Maples on behalf of Examiner Stuart M Maples <u>smaples@mapleslawfirmpc.com</u>

Leonard N Math on behalf of Creditor Ford Motor Credit Company, LLC <u>noticesnd@chambless-math.com</u>

Brian J Richardson on behalf of the Simple Helix Parties <u>brichardson@leo-law.com</u>

Clyde Ellis Brazeal, III on behalf of Renasant Bank <u>ebrazeal@joneswalker.com</u>

C Howard Grisham on behalf of Creditor Redstone Federal Credit Union <u>pcornelius@comcast.net</u>

William C Poole on behalf of Creditor BMW Bank of North America, c/o AIS Portfolio Services, LP <u>william_poole@bellsouth.net</u>

Paul Joseph Spina, III on behalf of Creditor Mercedes-Benz Financial Services USA LLC <u>pspina@spinalavelle.com</u>

**<u>Notice, via US Mail, will be sent to:</u>**

**All parties on the attached matrix that do not have representatives listed above.**

*/s/Kevin D. Heard*
Kevin D. Heard
