UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In the Matter of:               }
STEVE SHICKLES, JR. and         }  CASE NO. 19-80155-CRJ-11
RONDA SHICKLES                  }
                                }  CHAPTER 11
            Debtors.            }

## MEMORANDUM OPINION DENYING MOTION TO HOLD MAX SWOBODA AND EQUITY TRUST COMPANY IN CONTEMPT

This case first came before the Court on August 19, 2019 upon Debtors' Motion to Hold Max Swoboda and Equity Trust Company in Contempt (collectively "Swoboda"). The Debtors seek an order finding that Swoboda violated the automatic stay by initiating a postpetition criminal action against the Debtor, Steve Shickles, Jr. ("Shickles"), in an attempt to collect a prepetition debt. Following the hearing, the Court entered an Order Requiring Briefs,[1] directing the parties to address the following issues: (i) whether the postpetition prosecution of the criminal action is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(1); (ii) the effect of the Debtors' Confirmed Chapter 11 Plan pursuant to 11 U.S.C. § 1141 upon the continued prosecution of the criminal action; and (iii) whether Swoboda violated 18 U.S.C. § 152(6) by initiating the criminal action while participating in the Debtors' case.[2] On October 18, 2019, the parties timely submitted

---

[1] Order Requiring Briefs on Debtors' Motion to Hold Max Swoboda and Equity Trust Company in Contempt, ECF No. 414.

[2] Section 152(6) of Title 18 states as follows:
A person who:

(6) knowingly and fraudulently gives, offers, receives or attempts to obtain any money or property, renumeration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11;
. . . .
shall be fined under this title, imprisoned not more than five years, or both. 18 U.S.C. § 152(6).

The Debtors concede that Swoboda's actions do not constitute a bankruptcy crime for purposes of this

their respective briefs and the Court took the matter under advisement.[3]

The Debtors argue that Swoboda willfully and intentionally violated the automatic stay by initiating a postpetition criminal proceeding against Shickles; that Swoboda's actions were not excepted from the stay under 11 U.S.C. § 362(b)(1); and that his actions amount to coercion or harassment intended to pressure the Debtors to pay a debt which has been provided for by their Confirmed Plan. The Debtors further argue that Swoboda is barred from pursuing the criminal proceeding under the terms of their Confirmed Plan which constitutes a final judgment with res judicata effect pursuant to 11 U.S.C. § 1141.

Swoboda counters that the pending criminal proceeding is excepted from the automatic stay pursuant to the plain language of 11 U.S.C. § 362(b)(1) and that the Debtors' Confirmed Plan does not contain any language enjoining the criminal proceeding. Swoboda further argues that this Court should not judicially enjoin the criminal action because the Debtors have failed to satisfy the test established by the Eleventh Circuit for determining whether a bankruptcy court should enjoin a pending criminal proceeding.[4] Finally, Swoboda argues that even if the Court determines that the criminal proceeding should be enjoined, he should not be held in contempt because he initiated the criminal proceeding prior to any prospective injunction.

---

statute, stating "As far as Debtors are aware the actions . . . do not rise to a violation of 18 U.S.C. § 152(6)." *See* Memorandum in Support of Motion for Contempt Citation and for Sanctions, ECF No. 476. The Debtors concede that Swoboda never asked them to act or to forbear from acting and never offered to withdraw his criminal complaint in exchange for better treatment under their Chapter 11 Plan. Accordingly, the Court finds that Swoboda did not violate 18 U.S.C. § 152(6) by initiating the postpetition criminal action while participating in the Debtors' case and will not further address this issue.

[3] *See* Brief in Opposition to the Motion for Contempt Citation, ECF No. 477, and Memorandum in Support of Motion for Contempt Citation and for Sanctions, ECF No. 476.

[4] *See Barnette v. Evans (In re Barnette)*, 673 F.2d 1250 (11th Cir. 1982).

The Court has now considered the pleadings, briefs and Exhibits, and the applicable law, and makes the following findings of fact and conclusions of law pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.[5]

I. **FINDINGS OF FACT**

The pertinent facts in this matter are, for the most part, uncontroverted. In July of 2015, Swoboda, through a self-directed IRA administered by Equity Trust Company, purchased a 30% membership interest in an entity formed by Shickles, known as House Divided, LLC ("House Divided").[6]

On January 17, 2019, the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors did not list Swoboda as a creditor when for they filed their Chapter 11 petition nor when they subsequently filed their Schedules on February 11, 2019.[7]

On January 21, 2019, Shickles' former employer, Simple Helix, LLC ("Simple Helix") filed an Emergency Motion to Convert Case to Chapter 7, or in the Alternative, Dismiss and for Relief from the Automatic Stay ("Emergency Motion").[8] On January 28, 2019, at the Court's direction following the hearing on the Emergency Motion, the Debtors filed a Report to Court disclosing all of their assets, including their 70% ownership interest in House Divided.[9]

---

[5] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Alternatively, to the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.
[6] Affidavit of Maximillian A. Swoboda, Bill of Sale and Assignment of Interest, Ex. A, ECF No. 477 (hereinafter "Swoboda Affidavit").
[7] *See* Chapter 11 Petition, ECF No. 1, and Schedule E/F: Creditors Who Have Unsecured Claims, ECF No. 116.
[8] Emergency Motion, ECF No. 12.
[9] Report to Court, ECF No. 59.

On February 5, 2019, Swoboda filed an Incident/Investigation Report ("Incident Report") with the Huntsville Police Department, accusing Shickles of theft of property related to House Divided.[10] Thereafter, on March 15, 2019, Swoboda executed and filed a *pro se* Proof of Claim on behalf of the Equity Trust Co. Custodian FBO Maximillian A. Swoboda, asserting an unsecured claim in the amount of $63,000.

On June 9, 2019, the Debtors and Simple Helix filed a Joint Disclosure Statement and Joint Plan of Reorganization.[11] As subsequently amended on June 19, 2019, the Debtors' Amended Joint Plan of Reorganization ("Amended Joint Plan"), provided for a distribution equal to 10% of general unsecured claims.[12]

On July 11, 2019, Swoboda filed a Ballot, accepting the Amended Joint Plan.[13] Swoboda did not object to Confirmation nor appear at the Confirmation hearing. He took no action throughout the pendency of the bankruptcy case to indicate that he opposed payment under the Plan nor that he had initiated a separate criminal proceeding against Shickles. Swoboda proceeded in both matters without representation of counsel until the Debtors sought to hold him in contempt.

On July 18, 2019, the Court entered an Order Confirming the Amended Joint Plan ("Confirmation Order").[14] As revised and attached to the Confirmation Order, the Debtors' Plan requires the Debtors to turnover substantially all of their property and assets to a Liquidating Trustee who is charged with selling such property for the benefit of creditors, including Swoboda.

As revised, the Debtors' Plan states, in relevant part, as follows:

**4.11 Class 4 – Allowed General Unsecured Claims.**

---

[10] Swoboda Affidavit, Ex. K, ECF No. 477.
[11] ECF Nos. 283-284.
[12] Amended Joint Plan of Reorganization, ECF No. 312.
[13] ECF No. 335.
[14] Order Confirming Amended Joint Plan of Reorganization dated June 19, 2019, ECF No. 368.

4

Case 19-80155-CRJ11    Doc 494    Filed 12/20/19    Entered 12/20/19 09:31:43    Desc
Main Document      Page 4 of 14

Class 4 consists of all Allowed General Unsecured Claims. The total amount of the unsecured claims are approximately $11,126,850. The claims are of every kind and nature, whether or not a proof of claim was filed in this case, including but not limited to, all claims arising from personal guarantees, rents, mechanics liens, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims, unsecured tax claims, and damages arising from or related to any liquidated or contingent claim . . . .

Unless such holder agrees to other treatment (in which event, such other agreement shall govern); the holders of Allowed General Unsecured Claims, without priority, shall receive, in full satisfaction of such Claim, a Distribution from the Liquidating Trust established pursuant to this Plan and administered by the Liquidating Trustee equal to 10% of their Allowed Claim . . . .

\* \* \* \*

**11.6 Term of Injunctions or Stays.** Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during this Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of this Chapter 11 Case.

\* \* \* \*

**11.8 Jurisdiction of Bankruptcy Court.** The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to this Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

. . . .

(h) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court[.][15]

On July 18, 2019, the same day that the Court confirmed the Debtors' Plan, the police arrested Shickles, charging him with theft of property in the first degree under ALA. CODE § 13A-8-3. Shickles was required to post a bond in order to be released from custody. The criminal action remains pending in Madison County, Alabama, *State of Alabama v. Steven Ray Shickles, Jr.*, Case No. DC-2019-005422.

---

[15]     *Id.*

On October 7, 2019, the Liquidating Trustee filed a Motion to Approve the Sale of Substantially all of the Assets of the Liquidating Trust, including all personal and real property, all choses of action, all tax refunds, any and all other assets of the Trust whether or not disclosed ("Trust Assets"), to Simple Helix for $925,000.[16] On October 31, 2019, the Court entered an Order Approving Trustee's Motion to Approve Sale of Substantially all of the Assets of the Liquidating Trust to Simple Helix ("Order Approving Sale of Assets").[17] The Order Approving Sale of Assets states that "Time is of the essence in the proposed sale of the Assets, and the Trustee and the Purchaser intend to close the Transaction as soon as practicable."[18]

The sale of Trust Assets "will result in the Trust beneficiaries, other than Purchaser, receiving the full amount of their allowed claims under the Plan."[19] Once the sale of Trust Assets to Simple Helix has closed and the proceeds are paid to creditors by the Liquidating Trustee, the confirmed Plan will be substantially completed and the Debtors will be eligible for a discharge pursuant to Section 11.3 of the confirmed Plan, which states as follows:

> **11.3 Discharge.** Upon a certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtors shall receive a discharge of any and all debts of the Debtors that arose at any time before Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 114l(d)(l) and (d)(5) of the Code **excluding, however,** the debt owed by Debtors to the Simple Helix Parties, which debt is non-dischargeable under § 523 of the Bankruptcy Code as well as the claim of the United States of America - Internal Revenue Service. The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefore was filed, whether the Claim is an allowed claim, whether the claim is properly scheduled or whether the holder thereof votes to accept the Plan. The rights afforded in the Plan shall be in exchange for and in complete satisfaction,

---

[16] ECF No. 466.
[17] ECF No. 488.
[18] *Id.*
[19] Motion to Approve the Sale of Substantially all of the Assets of the Liquidating Trust, p. 3, ECF No. 466.

discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtors or their assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.[20]

## II. CONCLUSIONS OF LAW

### A. Willful Violation of the Automatic Stay

Absent a statutory exception, the filing of a bankruptcy petition operates as an automatic stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case under this title."[21] As explained by the Eleventh Circuit, the automatic stay "is designed to give the debtor "a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment plan, or simply to be relieved of the financial pressure that drove him into bankruptcy."[22] In the Eleventh Circuit, "[a]ctions taken in violation of the automatic stay are void and without effect."[23]

Section 362(k) of the Bankruptcy Code states that "an individual injured by any willful violation of the stay [under § 362(a)] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[24] "Claims under § 362(k) consist of three basic elements: the violation of the stay, the defendants' willfulness, and the plaintiffs' injury."[25] A violation of the stay is willful "if the violator (1) knew of the automatic

---

[20] Order Confirming Amended Joint Plan of Reorganization dated June 19, 2019, ECF No. 368.
[21] 11 U.S.C. § 362(a)(1).
[22] *Ellison v. Northwest Eng'g. Co. (In re Ellison)*, 707 F.2d 1310, 1311 (11th Cir. 1983)(quoting H.R. Rep. No. 595, 95th Cong.2d Sess. 340).
[23] *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006)(quoting *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir. 1982)).
[24] 11 U.S.C. § 362(k)(1).
[25] *Thomas v. Seterus (In re Thomas)*, 554 B.R. 512, 519 (Bankr. M.D. Ala. 2016)(Sawyer, J.).

7

stay and (2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the stay."[26]

"Unless the action comes under an exception in 11 U.S.C. § 362(b) or a party receives relief from the stay under 11 U.S.C. § 362(d), the stay generally remains in effect until the bankruptcy court disposes of the case."[27] Neither party disputes that the stay remains in effect in this case because the Debtors, as individual Chapter 11 debtors, will not be granted a discharge pursuant to 11 U.S.C. § 1141(d)(5)(A) until completion of all payments under their Confirmed Plan. Accordingly, the Court must determine whether the first exception to the stay set forth under 11 U.S.C. § 362(b)(1) is applicable under the circumstances of this case.

### B. Exceptions to the Automatic Stay

Section 362(b)(1) of the Code, states that the filing of a bankruptcy petition "does not operate as a stay – (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]"[28] While both parties acknowledge that the stay does not generally apply to the commencement or continuation of a criminal proceeding, courts are divided "on whether, and under what circumstances a creditor violates the automatic stay or discharge injunction by filing a post-petition or post-discharge criminal complaint . . . ."[29]

In the present case, Swoboda reported the alleged theft of property just days after the

---

[26] *Id.*(quoting *Jove Eng'g. v. IRS (In re Jove Eng'g.)*, 92 F.3d 1539, 1555 (11th Cir. 1996)).
[27] *Lodge v. Kondaur Capital Corp.,* 750 F.3d 1263, 1268 (11th Cir. 2014).
[28] 11 U.S.C. § 362(b)(1).
[29] *See Otten v. Majesty Used Cars, Inc. (In re Otten)*, 2013 WL 1881736 *8 (Bankr. E.D.N.Y. 2013)(collecting and comparing cases); *See also In re Byrd*, 256 B.R. 246, 251 (Bankr. E.D.N.C. 2000)(finding that "once a debtor files a petition for bankruptcy, a disgruntled creditor may not then approach a governmental prosecutorial entity in order to prompt a criminal action to recover a debt").

Debtors filed for bankruptcy relief and before the Debtors scheduled Swoboda as a creditor. Under the circumstances of this case, the Court finds that no grounds exist for holding Swoboda in contempt for reporting the alleged theft of property when he learned of same just days after the Debtors filed bankruptcy.

Nevertheless, both parties further acknowledge the Court's authority to judicially enjoin a criminal action under limited circumstances. "In deference to the state's interest in its criminal prosecutions, most courts have refused to stay a criminal proceeding absent a finding of bad faith on the part of the creditor, i.e. intent to circumvent the bankruptcy process."[30]

In the case of *Barnette v. Evans (In re Barnette),* the Court of Appeals reversed a decision enjoining a state criminal proceeding where the debtor was indicted a few months after he filed for bankruptcy for writing worthless checks prepetition for the purchase of automobiles. The Eleventh Circuit explained that there was no great and immediate danger of injury under the circumstances presented because "[t]here had been no criminal conviction and no discharge of the debt."[31] In the current case, although there has been no criminal conviction, the discharge of the debt owed to Swoboda based on the sale of all Trust Assets to Simple Helix is imminent as the result of the approved sale.

Courts have interpreted *Barnette* as establishing a two-prong test for determining whether a bankruptcy court should enjoin a state criminal proceeding on the grounds that it will frustrate the court's jurisdiction to discharge a debt. First, the debtor must affirmatively show that the

---

[30] 3 Collier on Bankruptcy, ¶ 362.05[1][a] (Richard Levin & Henry J. Sommer eds., 16th ed.)(citing *Barnette v. Evans (In re Barnette)*, 673 F.2d 1250 (11th Cir. 1982)).
[31] *Barnette v. Evans (In re Barnette)*, 673 F.2d 1250, 1251 (11th Cir. 1982).

9

Case 19-80155-CRJ11    Doc 494    Filed 12/20/19    Entered 12/20/19 09:31:43    Desc
Main Document      Page 9 of 14

criminal proceeding was brought in bad faith.[32] Second, if the debtor believes that the criminal action was brought as a subterfuge for debt collection, the Court must further determine whether the criminal prosecution jeopardizes the Debtors' right to a discharge that cannot be otherwise defended in the state court criminal proceeding.[33] To enjoin a criminal proceeding, both prongs of the test must be satisfied.

While some courts examine the creditor's motive for filing a criminal complaint to determine whether the creditor is primarily motivated by the desire to collect a dischargeable debt, a bankruptcy court recently distinguished this line of cases, explaining that the "primary motive test" is not applicable under the first prong of the Eleventh Circuit's *Barnette* test:

> Motive in pursuing postpetition criminal proceedings is relevant in jurisdictions that employ the 'primary motivation test,' which considers the subjective intent of the creditor as a basis for determining whether the offending acts violate the stay or discharge injunction. The Eleventh Circuit, however, has rejected the principal motive test. *Walker*, 157 Fed. Appx. at 173; *Tenpins Bowling,* 32 B.R. at 480 ("[T]he Eleventh Circuit in *Barnette* rejected the 'principal motivation' test and adopted a 'bad faith' test . . ."). Consequently, Debtor's complaints regarding Creditors' purported use of the criminal process to collect a debt are only relevant if the Debtor can show that the entire proceeding was brought in bad faith.[34]

In the case of *In re Cantin*, the bankruptcy court concluded that the debtor failed to establish that a creditor's participation in the postpetition prosecution and arrest of the debtor was indicative of bad faith where the creditor credibly testified that she participated as a witness solely to the extent she believed that she was compelled to do so.[35] Citing the Eleventh Circuit case of *In re*

---

[32] *See Buckley v. Patel (In re Buckley)*, 2015 WL 798535 *2 (Bankr. N.D. Ga. 2015); *Sheppard v. Piggly Wiggly (In re Sheppard)*, 2000 WL 33743081 (Bankr. M.D. Ga. 2000); *In the Matter of Tenpins Bowling, LTD*, 32 B.R. 474, 480 (Bankr. M.D. Ga. 1983).

[33] *In re Barnette*, 673 F.2d at 1252; *See also In re Cantin*, 2019 WL 2306620 at *11; *In re Buckley*, 2015 WL 798535 *2 (Bankr. N.D. Ga. 2015); *In re Sheppard*, 2000 WL 33743081 *1 (Bankr. M.D. Ga. 2000); and *In the Matter of Tenpins Bowling, LTD*, 32 B.R. 474, 480 (Bankr. M.D. Ga. 1983).

[34] *In re Cantin*, 2019 WL 2306620 at *14.

[35] *Id.* at *12.

10

*Walker*, the bankruptcy court explained that there are very few situations where a creditor will not hope for restitution, but such "desire alone does not taint an otherwise legal and non-harassing criminal prosecution with the specter of bad faith."[36]

In the case of *In re Walker*, the Eleventh Circuit held that an attorney did not violate the stay by assisting the state in enforcing a criminal judgment entered in favor of the attorney's client.[37] Prepetition, the debtor was convicted on several counts of theft and ordered to pay restitution as a condition of probation. Several years later, the debtor filed a Chapter 7 petition and the creditor participated in the case by filing a proof of claim. While the bankruptcy case was pending, the debtor was incarcerated for failing to pay restitution. The debtor moved to hold counsel in contempt, arguing that statements made by counsel during the restitution hearing were made with the intent of gaining an unfair advantage over the debtor's other creditors in violation of the stay.

The bankruptcy court held that criminal restitution hearings are exempt from the stay and that counsel did not violate the stay by assisting the prosecution. The Eleventh Circuit affirmed, explaining that "a creditor does not violate the stay by assisting the state in enforcing the criminal judgment, even though the creditor's primary motive is to collect on the debt . . . A criminal prosecution for theft often requires the assistance of the creditor, and this assistance does not violate the automatic stay."[38]

In the present case, the Debtors argue that Swoboda clearly acted in bad faith by initiating the criminal proceeding because he had actual knowledge of the Debtors' bankruptcy when he

---

[36] *In re Cantin* (citing *Walker v. Gwynn (In re Walker)*, 157 Fed. Appx. 171 (11th Cir. 2005)).
[37] *In re Walker*, 157 Fed. Appx. 171 (11th Cir. 2005).
[38] *Id.* at 173.

11

signed the arrest warrant, he voted in favor of the Joint Amended Plan, and failed to object to Confirmation. The Debtors assert that Swoboda fully participated in the bankruptcy case while initiating a parallel criminal proceeding without disclosing same during the bankruptcy proceeding in an attempt to receive more than other unsecured creditors.

Swoboda argues that the very facts which the Debtors argue support a finding of bad faith, i.e. his participation in the bankruptcy proceeding, actually reveal that he has acted in good faith by taking no action to thwart the bankruptcy process. Acting without the assistance of counsel, Swoboda filed a Ballot accepting the Debtors' Amended Joint Plan and took no action to oppose Confirmation, nor the treatment of his unsecured claim.

The Debtors further argue their confirmed Plan, which provided for the treatment of Swoboda's claim as unsecured dischargeable debt, constitutes a final judgment under 11 U.S.C. § 1141(a). Section 1141(a) of the Bankruptcy Code states as follow:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity holder, or general partner as accepted the plan.[39]

The parties are bound by the terms of the Confirmed Plan pursuant to § 1141(a) even after the Court grants the Debtors' discharge. "[O]nce a Chapter 11 plan is confirmed, it is binding on both the debtor and his creditors."[40] The confirmed plan becomes "res judicata to the parties and those in privity with them."[41] The Eleventh Circuit "follows principles of contract interpretation to

---

[39] 11 U.S.C. § 1141(a).
[40] *Id.*
[41] *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015).

12

interpret a confirmed plan of reorganization."[42]  "[T]he plain meaning of a contract's language governs its interpretation under general contract principals."[43]

In the context of an individual Chapter 11 case, the Eleventh Circuit recently explained the effect of a confirmed Chapter 11 Plan as follows:

> [A]s bankruptcy courts within this circuit have noted, 'a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor' where '[t]he creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan.' . . . . In other words, as a result of confirmation and discharge, '[t]he initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.'
>
> Before 2005, the same result occurred when the Chapter 11 debtor was an individual: that is, confirmation of the Chapter 11 plan also discharged any debts that arose before the date of confirmation. *See* 11 U.S.C. § 1141 (2000) . . . . In 2005, however congress amended § 1141 to provide that, when the debtor is an individual rather than a corporation or other business entity, 'confirmation of the plan does not discharge any debt provided for in the plan <u>until the court grants a discharge on completion of all payments under the plan</u>.'  11 U.S.C. § 1141(d)(5)(A)(emphasis added).[44]

Here, although the Debtors are individuals, pursuant to the terms of their confirmed Plan, the Court has approved the sale of substantially all of their assets.[45]  The terms of the Order Approving Sale of Assets provides that time is of the essence and that the Liquidating Trustee intends to close the sale as soon as practicable.[46]  Once the sale is closed and the proceeds are distributed, the Debtors will be entitled to receive their discharge and Swoboda's debt will be discharged.

---

[42]  *Id.*
[43]  *Id.*
[44]  *First National Bank of Oneida, N.A. v. Brandt (In re Brandt)*, 887 F.3d 1255, 1260 (11th Cir. 2018).
[45]  ECF No. 488.
[46]  *Id.*

13

Under the circumstances of this case given that the Debtors' discharge is imminent once the sale of all Trust Assets by the Liquidating Trustee is completed and distributions to creditors pursuant to the Plan are made, the Court finds that additional evidence is required to determine whether the statutory and Eleventh Circuit standard for enjoining a criminal proceeding is satisfied as to both prongs of the *Barnette* test. Accordingly, Court finds that an evidentiary hearing must be held to determine whether an injunction is necessary under the circumstances of this case to avoid an immediate danger of irreparable harm to Debtors' right to a discharge.

### III.  CONCLUSION

Based upon the forgoing, the Court finds that the Debtors' petition did not operate as a stay under § 362(a) to the commencement or continuation of the criminal proceeding. The criminal proceeding is excepted from the stay pursuant to 11 U.S.C. § 362(b)(1).  Because the criminal action was excepted from the stay at all times, the Court finds that Swoboda did not violate the stay by initiating the postpetition criminal proceeding and no grounds exit for holding him in contempt.  While Swoboda is bound by the terms of the Debtors' Confirmed Plan which provided for the payment of his unsecured claim and may not take any action to otherwise collect the debt, an evidentiary hearing is needed to determine if grounds exit to enjoin the criminal proceeding to avoid an adverse impact on the Debtors' federally protected right to a discharge.

The Court will enter a separate Order in conformity with this Opinion denying the Motion for Contempt and scheduling an evidentiary hearing.

**IT IS SO ORDERED** this the 20th  day of December 2019.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge